CITY OF ST. LOUIS, Plaintiff in Error, v. WILLIAM KLAUSMEIER.

In Banc, June 26, 1908.

1. **ORDINANCE AND STATUTES: Pure Food: Conflict.** An ordinance of St. Louis prescribing a penalty for selling dairy products of a standard below that fixed by the Legislature is valid.

2. ———: ———: ——— Milk. There is nothing in the statutes or the Constitution which prohibits the city council of St. Louis from enacting statutes supplementary of and in addition to statutes establishing standards of purity for milk; and an ordinance which in every instance fixes an equal or lower standard of strength and purity of milk than that fixed by the statute is not in conflict with the statute. The legal effect of such an ordinance would not be to authorize the sale of milk which does not come up to the standard fixed by the statute. It would merely impose a penalty for selling milk that does not come up to the standard fixed by the city, and thereby in no manner interfere with the statute.

3. ———: ———: ———: Higher Standard. But where the ordinance fixes a higher standard than the statute they are in conflict, and the ordinance to that extent is invalid. So that where the ordinance requires skimmed milk to contain not less than 10.5 per cent of total solids, and the statute fixes the standard at 9.25 per cent of total solids, the ordinance denounces as a crime what the statute says may be done, and they are in conflict, and this part of the ordinance is repealed by the statute by necessary implication. But a repeal of that portion does not operate as a repeal of the whole ordinance.

4. ———: ———: ———: ———: Guilty, Nevertheless. And where defendant is charged, not with selling skimmed milk, but cream containing less than twelve per cent of butter fat, he cannot, if guilty on that charge, escape punishment on the ground that the same ordinance prescribed that skimmed milk should contain not less than 10.5 per cent of total solids whereas the statute says it must not contain less than 9.25 per cent of total solids. The conflict between the ordinance and the statute as to skimmed milk does not destroy the whole ordinance or affect the non-conflicting provisions of the ordinance as to cream.

Error to St. Louis Court of Criminal Correction.— *Hon. Hiram N. Moore,* Judge.

REVERSED AND REMANDED.

*Charles W. Bates* and *Charles P. Williams* for plaintiff in error.

(1) By solemn instrument, in pursuance of constitutional provision, the State has granted to the city of St. Louis broad and extensive police powers for the

regulation of its local affairs.  St. Louis v. Liessing,. 190 Mo. 480; Railroad v. Railroad, 148 Mo. 676; Ex parte Lucas, 160 Mo. 236; State v. Tower, 185 Mo. 95; State v. Cafferata, 24 Mo. 94.  (2) The charter power of the city to enact the precise ordinances here in question and the validity of these ordinances have been repeatedly affirmed in this court.  Charter of St. Louis, art. 3, sec. 26, clauses 5, 6, 7 and 14; St. Louis v. Liessing, 190 Mo. 64; St. Louis v. Grafeman Dairy Co., 190 Mo. 492; St. Louis v. Grafeman Dairy Co.,. 190 Mo. 507; St. Louis v. Reuter, 190 Mo. 514; St. Louis v. Polinsky, 190 Mo. 516; St. Louis v. Schuler, 190 Mo. 524; St. Louis v. Bippen, 201 Mo. 528.  (3) Similar powers are possessed by the city with respect to the regulation of dairies and cow-stables.  St. Louis v. Fischer, 167 Mo. 654; Fischer v. St. Louis, 194 U. S. 361; St. Louis v. Schefe, 167 Mo. 666; Schefe v. St. Louis, 194 U. S. 373.  (4) The acknowledged existence of a power of concurrent regulation both in the city and in the State negatives the notion that such regulations must be absolutely identical.  The true rule is that they can validly co-exist as long as they are not irreconcilably repugnant in their operation.  (5) It is, at best, a case of implied repeal, and implied repeals are narrowly and strictly construed.  (6) The ordinances remain good under the decisions of this State.  St. Louis v. Bentz, 11 Mo. 61; St. Louis v. Cafferata, 24 Mo. 94; City v. DeLassus, 104 S. W. 12; State v. Muir, 164 Mo. 610; State v. Gustin, 152 Mo. 108; Canton v. McDaniel, 188 Mo. 228; Lebanon v. Gordon, 99 Mo. App. 277; Kansas City v. Hallett, 59 Mo. App. 164; Kansas City v. Zahner, 73 Mo. App. 396; Hill v. St. Louis, 159 Mo. 167.  (7) The ordinances in question do not undertake to say that milk which does not equal the standard set by the State can be sold in the city of St. Louis.  They merely provide a penalty for selling milk that does not at least

equal the percentages and grades set by the city, and the percentages and grades set by the city are strictly descriptive of the offense as against the city, and have nothing to do with the standard that is descriptive of the offense against the State. The penalties provided can operate concurrently and without interference.

*E. F. Stone* for defendant in error.

(1)   The ordinances, in order to be of any validity, must be consistent with the general laws of this State, and must be in harmony with the "legislative policy of the State manifested by its general enactments," and as commanded by the express provisions of the Constitution. Dillon on Mun. Corps. (4 Ed.), sec. 329; St. Louis v. Meyer, 185 Mo. 594; City of Moberly v. Hoover, 93 Mo. App. 663; State ex rel. v. St. Louis, 117 Mo. 13; State v. Kessels, 120 Mo. App. 239; Ewing v. Hoblitzelle, 85 Mo. 78. (2)   The ordinance fixes a standard for whole milk, cream, skimmed milk and condensed milk. The statute does the same. That an irreconcilable conflict and inconsistency exists between the standards for each of said products as fixed in the ordinance and the statute, there can be no question as is clearly shown when they are put side by side. The ordinance authorizes that to be done which the statute forbids. State v. Dorn, 145 Mo. 482. (3) These inconsistencies, both in specific provisions and in policy, operate as a repeal of said ordinance, as the Legislature can modify or repeal ordinances, and "such repeal need not be in express terms." If the intention clearly appears to repeal, the ordinance must give way, and the city must take notice of said inconsistency and repeal and regulate its affairs accordingly. State ex rel. v. Bell, 119 Mo. 70; State ex rel. v. Stobie, 194 Mo. 61; People v. Thurman, 85 Mich. 110; Mulcahy v. Newark, 57 N. J. L. 513.

WOODSON, J.—This prosecution was instituted against the defendant in error to recover a penalty of $100 for violating section 19 of ordinance No. 20808 of the city of St. Louis. Said section reads as follows:

"No cream shall be sold, offered for sale, exchanged, delivered or be transported for the purpose of sale, offering for sale, exchange or delivery, that contains less than twelve per centum of butter fat, or that is taken from any impure, diseased, unhealthy, unclean, adulterated, or unwholesome milk, or milk to which any foreign or other substance of any kind has been added. Any person violating any of the provisions of this section shall be deemed guilty of a misdemeanor, and on conviction thereof shall be fined not less than twenty-five dollars nor more than one hundred dollars for each and every offense."

The complaint charged that the defendant in error carried and exposed for sale, in the city of St. Louis, cream containing less than twelve per centum of butter fat.

The defendant in error was fined in the police court and took an appeal to the St. Louis Court of Criminal Correction. In said last-mentioned court, the defendant in error filed a motion to quash the information. The court entered judgment sustaining the motion to quash and discharging the defendant upon the fifth ground set out in the said motion to quash, which is as follows: "Because said ordinance is void as being inconsistent with the statute of this State."

After the case had been removed by writ of error to this court, the defendant in error filed a motion to dismiss the writ of error, together with the cause, upon the ground that certain statutes had been enacted which were irreconcilably inconsistent with the further enforcement of the ordinance. The statutes

which are invoked to defeat and to dismiss this prosecution are as follows:

Session Laws of 1905, page 133, entitled, "Dairy Commissioner—State: Terms, Duties and Powers Defined."

Session Laws of 1907, page 246, entitled, "Dairy and Food Commissioner."

Session Laws of 1907, page 238, entitled, "Crimes and Punishments: Adulteration of Foods and Drugs."

I.   There are many legal propositions presented and learnedly discussed by counsel for both plaintiff and defendant in error; but when reduced to their final analysis only one question remains for the consideration of this court, namely: Was the ordinance mentioned, which was in force at the time of the institution of this prosecution, subsequently repealed by the acts of the Legislature of 1905 and 1907?

The ordinance in question fixed the percentages and standards of whole milk and skimmed milk as follows:

*Whole Milk:*

    Butter fat not less than 3 per cent.

    Non-fatty solids not less than 8.5 per cent.

    Ash not less than .7 per cent.

    Total solids not less than 12.2 per cent.

    Butter fat to be determined exclusively by the Adams paper coil process.

*Cream:*

    Butter fat 12 per cent.

*Skimmed Milk:*

    Total solids not less than 10.5 per cent.

    Butter fat not less than 1.5 per cent.

    Specific gravity between 1.032 and 1.038.

While the acts of the Legislature mentioned prescribed the following percentages:

*Whole Milk*:

    Butter fat not less than 3.25 per cent.

    Non-fatty solids not less than 8.5 per cent.

    Total solids not less than 11.75 per cent.

    No process for analysis designated.

*Cream*:

    Butter fat 18 per cent.

*Skimmed Milk*:

    Total solids not less than 9.25 per cent.

It is the contention of the plaintiff in error, who will hereinafter be called the plaintiff, that these laws and the provisions contained therein were intended for the guidance of the State officers referred to in those acts; that it was not the intention of the Legislature to take away the powers of cities granted by charter to make additional and further regulations in respect to the same subject-matter; that the standards referred to in the statutes were intended to be descriptive only of the State offense, and that the ordinances of the city of St. Louis in question remain unimpaired, in full force and effect. The defendant, upon the other hand, insists that there is an irreconcilable conflict and inconsistency existing between the standards for such of said products as are fixed by the ordinance and those prescribed by the statutes. These respective contentions of the parties sharply present the legal proposition involved in this case.

It is not disputed, but it is conceded by plaintiff, that the acts of 1905 and 1907 are general laws of the State, and that they by their terms apply to the entire State and to all the cities thereof. And it is well settled that the ordinances of the city of St. Louis in order to be of any validity must be consistent with the general laws of the State, and must be in harmony with the "legislative policy of the State manifested by its general enactments," and as provided for in express terms by the Constitution. This proposition

is fully supported by the following authorities: Dillon on Mun. Corps. (4 Ed.), sec. 329; St. Louis v. Meyer, 185 Mo. 593-4; State ex rel. v. Railroad, 117 Mo. 1, 13; State v. Kessels, 120 Mo. App. 239; Ewing v. Hoblitzelle, 85 Mo. 64, 78.

But there is nothing in the Constitution or laws of the State which prohibits the city council from enacting ordinances supplemental of and in addition to the State laws in the establishment of standards of purity and providing for the inspection of dairy products. In fact, section 26 of article 3 of the charter of the city of St. Louis expressly authorizes the enactment of just such an ordinance as the one here in question, and the validity of this particular ordinance has been repeatedly sustained and upheld by this court. [St. Louis v. Liessing, 190 Mo. 464; St. Louis v. Grafeman Dairy Co., 190 Mo. 492; St. Louis v. Bippen, 201 Mo. 528.]

This brings us to the vital question involved in this case. Are the acts of 1905 and 1907, prescribing the percentages and standards of purity of dairy products and providing for their inspection, in conflict with the ordinance in question, which deals with the same subjects?

The ordinance in every instance, excepting one, fixes an equal or a lower standard of strength and purity than that fixed by the statute. The exception mentioned relates to one of the elements of skimmed milk. The ordinance fixes the total solids of skimmed milk at not less than 10.5 per cent, while the statute fixes the total solids at 9.25 per cent. The ordinance also requires certain ingredients and percentages thereof in whole milk and in skimmed milk which are not called for by the statutes. Those things called for by the ordinance and not by the statute are as follows: In whole milk, ash not less than 7 per cent, and in

skimmed milk, butter fat not less than 1.5 per cent; specific gravity between 1.032 and 1.038.

We suppose it will not be claimed, nor could it be logically contended, that there could be a conflict between the statute and the ordinance regarding those matters called for in the latter, and upon which the statute is silent. In order to be a conflict of any kind, two things must of necessity exist, and when it is contended that there is a conflict between two laws both must contain either express or implied provisions which are inconsistent and irreconcilable with each other. If either is silent where the other speaks, there can be no conflict between them.

The ordinance in those particulars is but additional to and supplemental of the statute in fixing the standard and purity of dairy products to be sold in the city of St. Louis. Those requirements of the ordinance are not in conflict with the statute, and there is nothing in the letter or spirit of the statute which prohibits the city from adding those requirements, while, upon the other hand, the charter of the city in express terms grants it the powers here claimed for it. If it can re-enact only such laws as are enacted by the Legislature, then the grant of such power to the city would be vain and useless in its object and purposes. The test being, there must be such inconsistency between the provisions of the ordinance and the statute as to annul the former. [St. Louis v. Cafferata, 24 Mo. 94; St. Louis v. DeLassus, 205 Mo. 578.]

And it is equally well established that where a city has concurrent powers with the State it may prescribe a penalty for the violation of its ordinances different from that prescribed by the State for the violation of a statute regarding the same subject-matter. [Hill v. St. Louis, 159 Mo. l. c. 167, and cases cited.] That being true, then we are unable to distinguish on principle why the city of St. Louis, which has express

authority to establish standards of strength and percentages of purity of dairy products, and the power to provide for their inspection, may not by ordinance fix a lower standard and percentage of strength and purity than that fixed by the State law. It must be conceded that even though the city possesses the power to pass such ordinances, it is not compelled to do so. If it sees proper it may enact no ordinance whatever upon the subject and rely exclusively upon the State law for protection against the sale of impure milk and butter. If the city can entirely decline to legislate upon the subject, then why may she not partially decline, that is, why may she not legislate so far along the lines covered by the statute and no further? The legal effect of such an ordinance would not be to authorize the sale of dairy products which do not equal the standards fixed by the State. It would merely impose a penalty for selling such products that do not come up to the standards fixed by the city, and thereby in no manner interfere with the State law. No good reason has been pointed out why the city may not remain inactive so long as milk dealers do not sell milk below a certain standard, even though that standard may be lower than that fixed by the Legislature of the State. Nor are we able to see any valid objection that can be urged against an ordinance prescribing a penalty for selling dairy products at a standard below that fixed by the State. The city might wisely rely upon the State law for protection against such illegal sales unless the products so sold fell below a certain standard of purity fixed by ordinance, and at the same time prescribe a penalty for selling such products which fall below the standard fixed by ordinance.

While such ordinance might not be as broad as the statute, yet it would not be inconsistent with the statute on that account. Both would proceed along the same lines, but the requirements of the former

would fall short of the requirements of the latter. This, however, would not render the ordinance void, as was held in the case of St. Louis v. DeLassus, 205 Mo. 578.

If a person sells dairy products in the city of St. Louis which come up to the standard of strength and purity fixed by the State, then he would be guilty of no offense either under the State law or the ordinances of the city; but if he should sell such products which do not come up to that standard, then he would be liable to punishment under the State law and not under the ordinance, unless the standard of strength and purity thereof should also fall below the standard prescribed by the city ordinance; in which event he would be liable to prosecution and punishment under both. Such has been the ruling of this court for many years, as is shown by the following cases: St. Louis v. Cafferata, 24 Mo. 94; St. Louis v. DeLassus, 205 Mo. 578; State v. Muir, 164 Mo. 610; State v. Gustin, 152 Mo. 108; Canton v. McDaniel, 188 Mo. 228; Hill v. St. Louis, 159 Mo. 1. c. 167; St. Louis v. Bentz, 11 Mo. 61.

In the particulars just considered we are of the opinion that there is no conflict between the ordinance and the statutes mentioned, and for the reasons stated the latter does not repeal the former as to the matters indicated. But so much cannot be said of the standard of solids prescribed by the ordinance for skimmed milk. For skimmed milk the ordinance fixed the total solids at not less than 10.5 per cent, while the statute fixed it at 9.25 per cent. In this particular there is a clear conflict between the statute and the ordinance, for a person might sell skimmed milk containing 9.25 per cent of solids, as prescribed by the State law, and still be guilty of an offense under the ordinance. In other words, the ordinance denounces that to be a

crime which the statute authorizes to be done. That cannot be true because section 23 of article 9 of the Constitution expressly provides that the charter and ordinances of the city shall be in harmony with and subject to the Constitution and laws of the State. To hold otherwise would be to subject the statute of the State to the operation of the ordinance of the city. [Dillon on Mun. Corp. (4 Ed.), sec. 329; St. Louis v. Meyer, 185 Mo. 593.]

We are, therefore, clearly of the opinion that the clause of the ordinance just mentioned is in direct conflict with the acts of the Legislature mentioned, and is repealed by necessary implication. But what bearing does that holding have upon the defendant in this case? It must be borne in mind that he is not charged with selling skimmed milk of standard but with selling cream in violation of section 19 of the ordinance, containing less than twelve per cent of butter fat. The defendant's contention in that regard is that a repeal of any portion of the ordinance operates as a repeal of the entire ordinance. We are unable to lend our assent to that contention. The law does not favor repeals by implication and must be narrowly and strictly construed, and will be permitted only where the conflict is so inconsistent and repugnant to each other that both laws cannot stand together. [State ex rel. v. Hopkins, 87 Mo. 519; Manker v. Faulhaber, 94 Mo. 430.] Clearly, under this rule, the other portions of the ordinance are not repealed, for the reason before stated, namely, the statute and the ordinance in all other respects stand together.

Thus viewing the case, we must conclude that the Court of Criminal Correction committed reversible error in quashing the information.

It is, therefore, ordered that the judgment be reversed and the cause remanded to be proceeded with in conformity to the views herein expressed.

All concur, except *Valliant, J.,* absent.