Daniel MILLER, et al., Plaintiffs–
Appellants,

v.

CITY OF MANCHESTER, Defendant–
Respondent.

No. 61316.

Missouri Court of Appeals,
Eastern District,
Division Three.

Aug. 11, 1992.

Thomas J. Prebil, St. Louis, for plaintiffs–appellants.

Patrick R. Gunn, St. Louis, for defendant-respondent.

STEPHAN, Judge.

Daniel Miller ("Miller") and Arlan Held ("Held"), fur trappers, filed a petition for declaratory judgment against the City of Manchester, Missouri ("the City"), challenging the validity of an ordinance which reads:

> ... It shall be unlawful for any person to employ a steel trap or similar device, the purpose of which is to harm, mutilate or kill an animal, with the exception of mouse traps, rat traps, mole traps, or gopher traps.

Manchester, Mo., Ordinance 89–404 (May 15, 1989). The trial court upheld the ordinance. It further determined that neither Miller nor Held had standing to bring the suit. We reverse.

The parties submitted their case to the trial court upon a "Joint Stipulation of Facts". In this stipulation, the parties agreed that Miller: (1) had trapped within the City's limits, on public right-of-ways; (2) had sold furs from animals trapped within the City; and (3) would suffer an economic detriment if he were prohibited from trapping within the City. The parties also agreed that although Held has not trapped within the City, he joined the suit both as an individual trapper and in his capacity as the President of the Missouri Trappers Association, a non-profit corporation dedicated to the safe and humane trapping of animals. The parties further stipulated that neither Miller nor Held: (1) resided in the City; (2) owned property there; (3) operated a business there; (4) possessed a City business license; or (5) paid taxes to the City, except for sales taxes on occasional purchases there.

Appellate courts usually review a case to determine whether there is substantial evidence to support the trial court's finding, whether the finding was against the weight of the evidence; whether the law was erroneously declared; or whether the law was erroneously applied. *Sheldon v. Bd. of Tr. of Pol. Ret. Sys.*, 779 S.W.2d 553, 554 (Mo. banc 1989). However, when the case is tried on a stipulation of the facts not involving resolution by the trial court of conflicting testimony, the only question before the appellate court is whether the trial court drew the proper legal conclusions from the facts stipulated. *Id.*

We address Miller's and Held's two points in the opposite order that they presented the points to us because their second point addresses a threshold issue: whether the trial court erred in finding that they did not have standing to bring suit. A party has standing to challenge the validity of an ordinance only if standing is conferred by statute or another applicable ordinance or if the party can demonstrate that he is directly and adversely affected by the ordinance. *City of Bridgeton v. Ford Motor Cr. Co.*, 788 S.W.2d 285, 290 (Mo. banc 1990).

Miller had standing to bring this declaratory judgment action for two reasons. First, § 527.020, RSMo.1986, provides:

Any person ... whose rights, status or other legal relations are affected by a ... municipal ordinance ... may have determined any question of construction or validity arising under the ... ordinance ... and obtain a declaration of rights, status or other legal relations thereunder.

Second, Miller has demonstrated that he has been and will continue to be directly and adversely affected by the ordinance since he has suffered and will continue to suffer an economic detriment if he is prohibited from trapping with steel traps in the City. The preservation of business opportunities and economic well-being are sufficient interests to confer standing. *See Real Estate Bd. v. City of Jennings*, 808 S.W.2d 7, 9 (Mo.App.1991) (wherein the court determined that the Real Estate Board of Metropolitan St. Louis ("the Board") had standing to challenge a city ordinance restricting the size of "for sale" signs since: (1) Board members have standing to sue in their own right; (2) the preservation of its members' business opportunities and economic well-being are germane to the Board's purpose; and (3) the requested declaratory relief does not require the participation of the Board's individual members). Thus, the trial court erred in determining that Miller did not have standing to bring this declaratory judgment action. The City's motion to dismiss this appeal for lack of standing is, therefore, denied. Moreover, since we have determined that Miller has the requisite standing, we need not determine whether Held has standing to maintain this action. *Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.*, 429 U.S. 252, 264, n. 9, 97 S.Ct. 555, 562, n. 9, 50 L.Ed.2d 450 (1977).

Miller's remaining point is that the trial court erred in denying their motion for declaratory judgment because: (1) the City is preempted by the Missouri Constitution from enacting an ordinance attempting to

regulate trapping since the Missouri Constitution vests exclusive control of all wildlife resources of the State in the Missouri conservation commission; and (2) the ordinance in question conflicts with the rules and regulations of the Missouri conservation commission, and is, therefore, void.

Article IV, § 40(a) of the Missouri Constitution states in pertinent part:

> The control, management, restoration, conservation and regulation of ... all wildlife resources of the state, ... and the administration of *all laws pertaining thereto*, shall be vested in a conservation commission.... (Emphasis ours).

The Missouri Legislature codified the creation of the conservation commission in § 252.002, RSMo.1986. It recognized the conservation commission's power to prescribe rules and regulations in §§ 252.-020(1) and 252.040, RSMo.1986. § 252.040, RSMo.1986, states in pertinent part:

> No wildlife shall be pursued, taken, killed, possessed or disposed of except in the manner, to the extent and at the time or times permitted by such rules and regulations; and any pursuit, taking, killing, possession or disposition thereof, except as permitted by such rules and regulations, are hereby prohibited....

The Missouri Legislature defined "wildlife" to include:

> all wild birds, mammals, fish and other aquatic and amphibious forms, and all other wild animals, regardless of classification, whether resident, migratory or imported, protected or unprotected, dead or alive; and shall extend to and include any and every part of any individual species of wildlife.

§ 252.020(3), RSMo.1986. The conservation commission, subsequently, promulgated its rules and regulations in the Wildlife Code of Missouri ("the Code"). In Chapter 8 of the Code, which regulates trapping, the conservation commission states: "[t]raps shall be *metal* traps with smooth jaws only and live traps, but shall not include pitfalls, deadfalls, snares, nets and colony traps." 3 CSR 10–8.510. (Emphasis ours).

A municipal ordinance must be in harmony with the general laws of the state and is void if in conflict. *Morrow v. City of Kansas City*, 788 S.W.2d 278, 281 (Mo. banc 1990). In determining whether an ordinance conflicts with general laws, the test is "whether the ordinance permits that which the statute forbids and prohibits, and vice-versa." *Id.* The ordinance may supplement a state law, but when the expressed or implied provisions of each are inconsistent and in irreconcilable conflict, then the statute annuls the ordinance. *Page Western, Inc. v. Community Fire Protection District*, 636 S.W.2d 65, 67 (Mo. banc 1982). An ordinance that merely enlarges on the provision of a statute by requiring more than the statute requires creates no conflict therewith, unless the statute limits the requirements for all to its own prescriptions. *Id.* Rules duly promulgated pursuant to properly delegated authority have the same force and effect of law. *Id.* Conflicts between ordinances and such regulations, therefore, are determined by the same principles that govern conflicts between ordinances and statutes. *Id.*

It is clear that a conflict exists between the City's ordinance and the conservation commission's regulations since the City's ordinance prohibits the use of "a *steel* trap or similar device to harm, mutilate or kill an animal, with the exception of mouse traps, rat traps, mole traps, or gopher traps" while the conservation commission regulations require that: "[t]raps shall be metal traps ..." (Emphasis ours.) Since the ordinance prohibits that which the regulations permit, the ordinance is void.

We note that because the ordinance is invalid, we need not reach Miller's remaining contention, that the ordinance is preempted by the Missouri Constitution. The trial court's judgment is reversed.

PUDLOWSKI, P.J., and CRIST, J., concur.