**Daniel MILLER, Appellant,**

v.

**CITY OF TOWN & COUNTRY,**
**Respondent.**

**No. ED 78815.**

Missouri Court of Appeals,
Eastern District,
Division Two.

Aug. 28, 2001.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 19, 2001.

Application for Transfer Denied
Jan. 22, 2002.

Steven W. Garrett, Curtis, Oetting, Heinz, Garrett & Soule, P.C., Clayton, MO, for appellant.

Thomas J. Prebil, Brasher Law Firm, L.C. St. Louis, MO, for respondent.

JAMES R. DOWD, Judge.

Daniel Miller and four others sued the city of Town and Country requesting injunctive relief and a judgment declaring void an ordinance that required persons seeking to hunt or trap on government lands within that city to first obtain permission from the government owning the property.[1] Miller claims that the ordinance is inconsistent with the Missouri Constitution and seeks damages under 42 U.S.C. § 1983, claiming the city violated his Fourteenth Amendment rights under the U.S. Constitution. The trial court dismissed Miller's petition for failure to state a claim upon which relief can be granted. Miller appeals. We affirm.

On May 12, 1997 the Town and Country Board of Aldermen adopted Ordinance No.2078. This ordinance prohibited hunting and trapping on city, county, state and federal property and rights-of-way without permission of the owner. The preamble to the ordinance reads:

> WHEREAS, the City of Town and Country is concerned that hunting or trapping on public property and/or public rights-of-way are hazardous to pedestrian, passersby, children, pets and wildlife
>
> WHEREAS, the City of Town and Country acknowledges the authority of the State of Missouri through its Department of Conservation to regulate hunting and trapping of wildlife.

The ordinance itself reads, in relevant part:

> (a) It shall be unlawful for any person to commit, or attempt to commit, the following acts on any City, County, State or Federal property, or rights-of-ways:
>
> (1) to hunt or kill any wildlife, including all animals, reptiles and birds;
>
> (2) to trap, by any means, any wildlife, including all animals, reptiles and birds.
>
> * * *
>
> (c) Any person who possesses the required hunting and/or trapping permit issued by the State of Missouri and who is not in violation of the terms and conditions of that permit and who also possesses the written permission of the

---

1. Tim Reed, Tim Flynn, Bob Hawthorne and Charlie Brown, who were parties to the original suit, voluntarily dismissed their claims and are not parties to this appeal.

owner of the city, county, state or federal property, or right-of-way, to hunt or trap on said property and who is otherwise not in violation of any state statute, county ordinance, or city ordinance shall not be deemed to be in violation of this section.

■ Because this is an appeal from a grant of the defendant's motion to dismiss for failure to state a claim, we accept as true all well-pled allegations in the plaintiff's petition. *Nazeri v. Missouri Valley College*, 860 S.W.2d 303, 306 (Mo. banc 1993). According to his petition, Miller is a former president of the Missouri Trappers Association. He has trapped in Missouri and inside the city limits of Town and Country for more than thirty years. After Town and Country passed ordinance 2078, Miller requested permission from the city to trap on public property. Because Town and Country never responded to his request, Miller refrained from trapping within the city during the 1997 and 1998 trapping seasons and now claims economic damages.

On November 16, 1998, Miller filed a petition seeking a temporary restraining order prohibiting the city from enforcing ordinance 2078, preliminary and permanent injunctions against the same, a judgment declaring the ordinance void, and damages pursuant to 42 U.S.C. § 1983. On November 19, 1998, the trial court issued a temporary restraining order preventing the city from enforcing ordinance 2078 until a hearing on the preliminary injunction, which was scheduled for January 15, 1999. That hearing was never held. After the case was placed and removed from the dismissal docket three times, Town and Country filed a motion to dismiss Miller's petition for failure to state a claim. The trial court granted that motion and entered judgment dismissing Miller's suit on October 27, 2000. Miller appeals.

Miller makes essentially three arguments to support his claim that ordinance 2078 is invalid under Missouri law: (1) that the Conservation Commission is vested with exclusive authority to regulate hunting, trapping and fishing; (2) that the city does not possess the necessary police power to pass an ordinance requiring hunters and trappers to obtain permission from government owners of land and rights-of-way; and (3) that Town and Country's ordinance is preempted by the Wildlife Code.

■ In support of his argument that the Conservation Commission has exclusive jurisdiction over all aspects of hunting, trapping and fishing Miller cites to Article IV, section 40(a) of the Missouri Constitution, which in relevant part, states:

The control, management, restoration, conservation and regulation of the bird, fish, game, forestry and all wildlife resources of the state, including hatcheries, sanctuaries, refuges, reservations and all other property owned, acquired or used for such purposes and the acquisition and establishment thereof, *and the administration of all laws pertaining thereto*, shall be vested in a conservation commission consisting of four members appointed by the governor . . .

(emphasis added). The Missouri General Assembly enacted legislation to carry out that constitutional mandate in what is now chapter 252 of the Missouri Revised Statutes. That chapter creates a Department of Conservation to be headed by the Conservation Commission. All the powers, duties and functions of the Conservation Commission have been transferred to the Department of Conservation by virtue of § 252.002.2. Section 252.030 vests ownership and title in the state of Missouri to all wildlife within the confines of Missouri.

The General Assembly recognized the Conservation Commission's power to prescribe rules and regulations in §§ 252.020(1) and 252.040. Pursuant to its constitutional and statutory authority, the Conservation Commission promulgated its rules and regulations, creating the Wildlife Code of Missouri. Section 252.040, which enables the Department of Conservation to regulate hunting, trapping and fishing, reads:

> No wildlife shall be pursued, taken, killed, possessed or disposed of except in the manner, to the extent and at the time or times permitted by such rules and regulations; and any pursuit, taking, killing, possession or disposition thereof, except as permitted by such rules and regulations, are hereby prohibited.

 Miller apparently focuses on the words "all laws pertaining thereto" contained in the constitutional grant of authority to the Commission for his argument that no other governmental entity can pass any law that impacts on hunting or trapping. Miller is correct that the Commission has control over the *length of the seasons* for hunting, trapping and fishing on all land, public and private, within the state of Missouri. The Commission also has exclusive authority over the manner in which fish and game are taken and other important issues relating to the conservation of Missouri wildlife. But a fair reading of Article IV, section 40(a) does not lead to the conclusion that the Conservation Commission is vested with exclusive authority to regulate the *location* of hunting, trapping and fishing. The Missouri Constitution does not vest authority in the Conservation Commission over *all* land in the State of Missouri, only over "hatcheries, sanctuaries, refuges, reservations and all other property owned, acquired or used for . . ." the conservation of wildlife.

Miller's reliance on § 252.040 is similarly misplaced. Section 252.040 grants authority to regulate only the *time, manner and extent* of hunting and trapping; it does not grant authority to the Conservation Commission to regulate *where* hunting, trapping and fishing are allowed. Section 252.040 says merely that *if* you hunt, trap or fish, *then* you must do so in the manner, to the extent and during the times permitted by the rules and regulations of the Department of Conservation. It does not say that other governmental bodies are prohibited from imposing restrictions on where hunting, trapping and fishing may occur. Included in the Commission's authority to prohibit the hunting and trapping of wildlife is, of course, the power to prohibit hunting in any particular area of the state. But this is part of the Commission's authority to conserve wildlife and should not be confused with the exclusive power to regulate hunting and trapping on all land in the state. The Commission's constitutional and statutory authority does not prevent landowners *from imposing conditions on the right to hunt or trap on their land.*

 Finally, the Department of Conservation's rules and regulations assume that the law of trespass and other law regulating the reasonable use of property would establish the physical boundaries within which hunting, trapping and fishing may occur. This assumption is made clear by the Wildlife Code's references to the issue of hunting, trapping and fishing on the land of others. In the 164 pages of the Wildlife Code the word 'trespass' is used twice. Section 3 CSR 10–7410(N) of the Code provides: "Any person while hunting who kills or injures any wildlife shall make a reasonable search to retrieve the wildlife and take it into his/her possession; however, *this does not authorize trespass.*" (emphasis added). Section 3 CSR 10–9.625(4)

provides: "A field or retriever trial permit *does not authorize trespass.*" (emphasis added). These references demonstrate the Conservation Commission's role in Missouri's constitutional scheme.

■ Miller next argues that the Town and Country ordinance is invalid because the police power does not allow the city to regulate on the subject of hunting and trapping. Missouri municipal law requires that a city's authority to exercise police power derive from a specific delegation by the state or from the express or fairly implied grant of powers of a city's charter. *Tietjens v. City of St. Louis,* 359 Mo. 439, 222 S.W.2d 70, 73 (1949). The specific statutory delegation of police powers to municipalities of the fourth class, such as Town and Country, is found in § 79.110. That section defines the powers and duties of mayors and boards of alderman as follows:

> The mayor and board of aldermen of each city governed by this chapter shall have the care, management and control of the city and its finances, and shall have power to enact and ordain any and all ordinances not repugnant to the constitution and laws of this state, and *such as they shall deem expedient for* the good government of the city, *the preservation of peace and good order,* the benefit of trade and commerce *and the health of the inhabitants thereof,* and such other ordinances, rules and regulations as may be deemed necessary to carry such powers into effect, and to alter, modify or repeal the same.

(emphasis added). This statutory grant of authority allows Town and Country to exercise general police powers and to pass ordinances for the health and safety of its citizens. *State v. Halliburton,* 276 S.W.2d 229, 234 (Mo.App.1955).

■ The test of the validity of an exercise of police power is reasonableness. *McDonnell Aircraft Corporation v. City of Berkeley,* 367 S.W.2d 498, 501 (Mo.1963). An ordinance is presumed a valid exercise of police power and the party challenging the ordinance carries the burden of showing that it is unreasonable. *Bibb v. Navajo Freight Lines,* 359 U.S. 520, 529, 79 S.Ct. 962, 3 L.Ed.2d 1003 (1959); *Salsburg v. Maryland,* 346 U.S. 545, 553, 74 S.Ct. 280, 98 L.Ed. 281 (1954); *Caesar's Health Club v. St. Louis County,* 565 S.W.2d 783, 786 (Mo.App.1978). Upon review, this court may reverse a legislative action only if it is arbitrary and unreasonable. *State ex rel. Helujon, Ltd. v. Jefferson County,* 964 S.W.2d 531, 536 (Mo.App. E.D.1998). An ordinance is a legitimate exercise of police power if the expressed requirements of the ordinance bear a substantial and rational relationship to the health, safety, peace, comfort, and general welfare of the municipality's citizenry. *Schnuck Markets, Inc. v. City of Bridgeton,* 895 S.W.2d 163, 166 (Mo.App. E.D.1995). When reasonable minds differ over whether a particular ordinance bears a substantial relationship to the protection of the general health, safety, or welfare of the public, then the issue must be decided in favor of the ordinance. *Bezayiff v. City of St. Louis,* 963 S.W.2d 225, 229 (Mo.App. E.D.1997).

■ The preamble to Ordinance 2078 reads: "WHEREAS, the City of Town and Country is concerned that hunting or trapping on public property and/or public rights-of-way are hazardous to pedestrian, passersby, children, pets and wildlife ..." On its face, this ordinance is a proper exercise of the city's police powers because it is designed to protect its inhabitants from injury.[2]

---

**2.** A strained reading of the ordinance could suggest Town and Country's use of the word

Miller's final argument for the invalidity of the Town and Country ordinance is that it is preempted by provisions of the Wildlife Code. The issue of preemption may fairly be divided into two questions: Has the Missouri legislature expressly preempted the area? And is the city's regulation in conflict with state law? *Page Western, Inc. v. Community Fire Protection Dist. of St. Louis County,* 636 S.W.2d 65, 66 (Mo. banc 1982). We look to a statute's plain and ordinary meaning to determine if a specific subject of regulation is expressly preempted. *City of Dellwood v. Twyford,* 912 S.W.2d 58, 60 (Mo. banc 1995). An ordinance that merely enlarges on the provision of a statute by requiring more than the statute requires creates no conflict between the two. *Page Western,* 636 S.W.2d at 67. However, when the express or implied provisions of the local regulation and the state statute are inconsistent and irreconcilable, the local regulation is deemed void. *City of Dellwood,* 912 S.W.2d at 60. Rules created pursuant to properly delegated authority have the same force and effect as a statute. *Page Western, Inc.,* 636 S.W.2d at 66. The rules promulgated by the Department of Conservation thus prescribe law. Conflicts between ordinances and regulations, therefore, are determined by the same principles that govern conflicts between ordinances and statutes. *Id.*

Many preemption cases begin their approach to the questions of consistency and reconciliation with the thought that a statute is inconsistent and irreconcilable if it

"permits what the statute prohibits" or "prohibits what the statute permits." *Id.; City of St. Louis v. Klausmeier,* 213 Mo. 119, 112 S.W. 516, 518–519 (1908); *Vest v. Kansas City,* 355 Mo. 1, 194 S.W.2d 38, 39 (1946), *State ex rel. Hewlett v. Womach,* 355 Mo. 486, 196 S.W.2d 809, 812 (1946). Miller argues that because the Wildlife Code does not *require* written permission from the owner of public property or public rights-of-way to trap that it *permits* trapping on those lands, and therefore the Town and Country ordinance "prohibits what the statute permits."

In order to interpret the expressions "prohibit what the statute permits" and "permits what the statute prohibits" we look to *specific substantive prohibitions and liberties* in the statute or constitutional provision. *See St. Charles County Ambulance District v. Town of Dardenne Prairie,* 39 S.W.3d 67, 69 (Mo.App. E.D.2001); *State ex rel. Casey's General Stores, Inc. v. City of West Plains,* 9 S.W.3d 712, 721 (Mo.App. S.D. 1999); THOMAS N. STERCHI, STATE-LOCAL CONFLICTS UNDER THE NEW MISSOURI HOME RULE AMENDMENT, 37 Mo.L.REV. 677, 684–92 (1972). If a statute does not specifically grant a right, but is silent on the question, then it may be permissible for the local government to establish prohibitions in that area.

In support of his contention that the Town and Country ordinance impermissibly requires a governmental landowner's permission to hunt and trap on their property Miller cites *Miller v. City of Man-*

---

'wildlife' in its ordinance is an attempt to protect wildlife, which is arguably the exclusive domain of the Conservation Commission. But in reading an ordinance we are directed to find a harmonious reading if that reading is reasonable and to find unconstitutional only that portion of an ordinance that is clearly inconsistent with the constitutional delegation of authority. *See Buchanan v. Kirkpatrick,*

615 S.W.2d 6, 12 (Mo. banc 1981); *State ex rel. Hughes v. Southwestern Bell Telephone Co.,* 352 Mo. 715, 179 S.W.2d 77, 80 (1944). We therefore assume that the protection of wildlife alluded to in ordinance 2078 is to further the end of safeguarding the well-being of persons who might be threatened by injured or trapped animals.

*chester,* 834 S.W.2d 904 (Mo.App. E.D. 1992). In *Miller,* the City of Manchester passed an ordinance regulating trapping, which read as follows:

> It shall be unlawful for any person to employ a steel trap or similar device, the purpose of which is to harm, mutilate or kill an animal, with the exception of mouse traps, rat traps, mole traps, or gopher traps.

*Id.* at 905. Finding the Manchester ordinance to be in conflict with § 3 CSR 10–8.510 of the Wildlife Code the court in *Miller* said:

> It is clear that a conflict exists between the City's ordinance and the conservation commission's regulations since the City's ordinance prohibits the use of "a *steel* trap or similar device to harm, mutilate or kill an animal, with the exception of mouse traps, rat traps, mole traps, or gopher traps" while the conservation commission regulations require that: "[t]raps shall be metal traps ..." Since the ordinance prohibits that which the regulations permit, the ordinance is void.

*Id.* at 907.

The Manchester ordinance flew directly into the teeth of the exclusive jurisdiction of the Conservation Commission. It was not an exercise of traditional police power, but an attempt to regulate the *manner and proper objects* of trapping. The Manchester ordinance prohibited the one method of trapping required by the Wildlife Code and specified which animals could be trapped. This court found that the Manchester ordinance encroached on the legitimate authority and expertise of the Conservation Commission, and was prohibited under Article 4, § 40(a) of the Missouri Constitution.

The Town and Country ordinance here does not attempt to regulate the method of trapping or which animals may or may not be trapped. It serves a legitimate police function by requiring persons to obtain permission before hunting or trapping so that a governmental owner who grants permission then has an opportunity to warn others that hunting and trapping are occurring on the property. This is a reasonable exercise of the police power of a city of the fourth class under Missouri law because it is focused on the safety of its citizens and allows governmental property owners control over activities on their property. Because Town and Country's ordinance is a valid exercise of police power and is consistent with the Missouri Constitution, Miller has not been deprived of a right, privilege, or immunity secured by the Constitution under color of state law and his 42 U.S.C. § 1983 claim must fail. *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). The judgment of the circuit court is AFFIRMED.

CLIFFORD H. AHRENS, P.J., and WILLIAM H. CRANDALL, Jr., J., Concurs.