Dear Senator Griesheimer:
This opinion is in response to your request regarding whether "political subdivisions" have the authority to pass ordinances making the sale of products containing pseudoephedrine by prescription only.
We recognize, first, that federal law regulates the sale of many pharmaceuticals, including, to some degree, pseudoephedrine. But federal law does not prevent the ability of the State of Missouri and its political subdivisions from further regulating pseudoephedrine. Rather, Congress has preserved sufficient state regulatory authority to require dispensing by prescription only.See, 21 U.S.C. § 379r (expressly excluding from preemption "any State or political subdivision requirement that a drug be dispensed only upon the prescription of a practitioner licensed by law to administer such drug").
State laws may, of course, bar political subdivisions from imposing such requirements. Specifically, § 71.010 bars ordinances that conflict with state statutes: *Page 2 
 Any municipal corporation in this state, whether under general or special charter, and having authority to pass ordinances regulating subjects, matters and things upon which there is a general law of the state, unless otherwise prescribed or authorized by some special provision of its charter, shall confine and restrict its jurisdiction and the passage of its ordinances to and in conformity with the state law upon the same subject.
But § 71.010 does not bar all local governments from passing any ordinances not identical to state laws. It bars local ordinances only when the legislature has expressly preempted the areaand the local regulation is in conflict with the state law.Miller v. City of Town Country,62 S.W.3d 431, 438 (Mo.App. E.D. 2001). "An ordinance that merely enlarges on the provision of a statute by requiring more than the statute requires creates no conflict between the two."Id. at 438; City of Kansas City v. Carlson, 2009 WL 1748708 *2 (Mo.App. W.D. 2009) (local ordinance does not violate § 71.010 if it prohibits more than the state statute prohibits); Kansas City v. LaRose,524 S.W.2d 112, 116-18 (Mo. banc 1975) (where both statute and ordinance are prohibitory, and ordinance merely goes further than state law, ordinance does not violate § 71.010).
The statute currently regulating pseudoephedrine sales, § 195.417, does not meet the two requirements for preemption. That statute limits the amount of drugs containing pseudoephedrine, ephedrine, or similar substances that may be sold to one person in a certain period of time, and requires these drugs to be sold behind a pharmacy counter. It is designed to prevent individuals from obtaining large amounts of the drugs used to manufacture methamphetamine. A local ordinance that further restricts a person's access to drugs containing pseudoephedrine does not conflict with a law that restricts a person's access to drugs containing pseudoephedrine. Such an ordinance merely enlarges on the state law.
That state law does not prohibit an ordinance, however, does not mean that state law permits it. Thus the final question is whether the political subdivision passing the ordinance has authority, either express or implied, to do so. Generally, counties, cities, and other municipal corporations "have no inherent powers but are confined to those expressly delegated by the sovereign and to those powers necessarily implied in the authority to carry out the delegated powers." Christian County v. Edward D. Jones and Co.,L.P., 200 S.W.3d 524, 527 (Mo. banc 2006), quoting PremiumStandard Farms, Inc. v. Lincoln Township of Putnam County,946 S.W.2d 234, 238 (Mo. banc 1997). Counties and public corporations "may only exercise powers (1) granted to them in express words by the state, (2) those necessarily and fairly implied in or incident to those powers expressly granted, and (3) those essential and indispensable to the declared objectives and purposes of the county." Borron v. *Page 3 Farrenkopf, 5 S.W.3d 618, 620 (Mo.App. W.D. 1999); PremiumStandard Farms, Inc. v. Lincoln Township of Putnam County,946 S.W.2d at 238. If the local governmental body acts beyond its authority, its acts are void. Borron v. Farrenkopf,5 S.W.3d at 620.
Regulation of pseudoephedrine sales is an exercise of police power. "Police power is the exercise of the sovereign right of a government to promote order, safety, health, morals, and the general welfare of society, within constitutional limits." Barber v.Jackson County Ethics Comm'n,935 S.W.2d 62, 66 (Mo.App. W.D. 1996); St. CharlesCounty v. St. Charles Sign Elec., Inc.,237 S.W.3d 272, 275 (Mo.App. E.D. 2007). "(T)he police power is one to be exercised within wide limits of legislative discretion and if (an ordinance) appears to be within the apparent scope of this power, the courts will neither inquire into the wisdom of the grant of power nor substitute its discretion for that of the legislature." Meyer v. St. Louis County,602 S.W.2d 728, 734 (Mo.App. E.D. 1980).
In Missouri, cities and counties have no inherent police powers; such powers must be granted by statute or set forth in the municipal corporation's charter. Clifford Hindman Real Estate, Inc. v. Cityof Jennings, 283 S.W.3d 804, 809 (Mo.App. E.D. 2009);Borron v. Farrenkopf, 5 S.W.3d at 620-21; KansasCity v. J. I. Case Threshing Mach. Co.,87 S.W.2d 195, 198-99 (Mo. Banc 1935). We separately address counties, cities, and towns and villages below.
Certain counties are given authority to exercise police power for the benefit of their inhabitants. Article VI, § 18(c) allows charter counties to exercise legislative power regarding all services and functions of local government, subject to certain restrictions-power that includes police powers. Barber v. Jackson County EthicsComm'n, 935 S.W.2d 62, 66 (Mo.App. W.D. 1996) ("One of the powers granted to charter counties by the constitution is the police power."). See also Turner v. Kansas City,191 S.W.2d 612, 616 (Mo. 1945) (constitutional authority to form a charter government must include the grant of the police power necessary for that government to function properly). Similarly, Article VI, § 18(m) allows first class counties that do not adopt charters to instead adopt constitutions that give them "any and all powers the general assembly has the authority to confer," subject to certain restrictions. That, too, includes police powers. (Hereafter we include such counties among "charter," as opposed to "noncharter counties.") And, § 49.650.1, RSMo Cum. Supp. 2004, gives noncharter counties certain police powers, but these police powers specifically exclude the power to pass an ordinance regulating the sale of products containing ephedrine or pseudoephedrine. Section 49.650.1(7), RSMo Cum. Supp. 2004. No other statute grants a general police power to counties. Therefore, charter counties that have included a general police power in their charters or in their constitutions, but no other counties, have the police *Page 4 
power necessary to pass an ordinance that would require a prescription to purchase products containing pseudoephedrine.
Certain cities are given authority to exercise police power for the benefit of their inhabitants. Article VI, § 19(a) gives charter cities "all powers which the general assembly of the state of Missouri has authority to confer upon any city," subject to the state constitution and laws, and few other restrictions. City ofKansas City v. Carlson, 2009 WL 1748708 *2 (Mo.App. W.D. 2009) (charter city had authority to pass indoor smoking ordinance that was more restrictive than state law). Section 79.110, RSMo 2000, similarly gives powers to fourth-class cities:
 [S]hall have power to enact . . . any and all ordinances not repugnant to the constitution and laws of this state, and such as they shall deem expedient for the good government of the city, the preservation of peace and good order, the benefit of trade and commerce and the health of the inhabitants thereof, and such other ordinances, rules and regulations as may be deemed necessary to carry such powers into effect, and to alter, modify or repeal the same.
This statute gives fourth-class cities "general police powers."Miller v. City of Town Country,62 S.W.3d 431, 437 (Mo.App. E.D. 2001) (city had power to enact hunting ordinance more restrictive than state's regulation); seealso § 79.370, RSMo 2000 (giving fourth-class cities power to regulate or prevent business activities dangerous to public health); § 79.450.7, RSMo 2000 (fourth-class cities "may enact or make all ordinances, rules and regulations, not inconsistent with the laws of the state, expedient for maintaining the peace, good government and welfare of the city."). Third-class cities are given powers under § 77.590, RSMo 2000, to make ordinances regarding items mentioned in the chapter, and also to "enact and make all such ordinances and rules, not inconsistent with the laws of the state, as may be expedient for maintaining the peace and good government and welfare of the city and its trade and commerce."[1] City of Overland v. Wade,85 S.W.3d 70, 72 *Page 5 
(Mo.App. E.D. 2002) (this section allows a third-class city "to exercise general police powers and to pass ordinances for the welfare and safety of its citizens."). Therefore, charter cities that have included a general police power in their charters, and third-and fourth-class cities have the police power necessary to pass an ordinance that would require a prescription to purchase products containing pseudoephedrine.
Finally, towns and villages are granted a general police power in § 80.090(40), RSMo 2000, which states that towns and villages have power to "pass such other bylaws and ordinances for the regulation and police of such town and commons thereto appertaining as they shall deem necessary, not repugnant to and contrary to the laws of the state." It has been held, however, that this police power only gives a general police power necessary to carry out the 39 enumerated powers in this section. Krug v. Village of MaryRidge, 271 S.W.2d 867, 870 (Mo.App. 1954). Subsection (1) gives power to prevent and remove nuisances, and subsection (16) gives power to "regulate markets," but it would require a broad reading of these sections, in conjunction with subsection (40), to find that towns and villages had power to pass an ordinance requiring a prescription for sales of products containing pseudoephedrine.
 CONCLUSION
A local government is not preempted by federal or state law from passing an ordinance making the sale of products containing pseudoephedrine by prescription only. Charter counties and cities which have included a general police power in their charters or constitutions, third-and fourth-class cities, and possibly towns and villages, have the police power necessary to pass an ordinance that would require a prescription to purchase products containing pseudoephedrine. No other local governments have been granted the authority necessary, so they do not have the authority to pass such an ordinance.
 Very truly yours,
 CHRIS KOSTER Attorney General
[1] In Clifford Hindman Real Estate, Inc. v. City ofJennings, 283 S.W.3d 804, 809 (Mo.App. E.D. 2009), the court stated that cities have no inherent police power, and struck down a city's licensing scheme because the "only source of power" for that scheme was a taxing statute, § 94.110. Because a city's authority to tax is limited by statute, it cannot pass an unauthorized tax under its general police power, because that would conflict with state law. Because this case does not imply that third-class cities have no general police power, it is distinguishable from the question here. *Page 1