STATE ex inf. William HANNAH, ex rel. Catja CHRIST, et al., Respondents,

v.

CITY OF ST. CHARLES, Missouri, Appellant.

STATE ex rel. William HANNAH, Prosecuting Attorney, St. Charles County, ex rel. John C. HANNEKE, et al., Respondents,

v.

CITY OF ST. CHARLES, Missouri, Appellant.

No. 65710.

Supreme Court of Missouri, En Banc.

Sept. 11, 1984.

George A. Weible, City Atty., St. Charles, for appellant.

Robert Denlow, Clayton, Rollin J. Moerschel, St. Charles, for respondents.

Fredrich J. Cruse, City Counselor, Hannibal, amicus curiae.

DONNELLY, Judge.

This is an annexation case in which the City of St. Charles, a constitutional charter city, appeals from three judgments of the circuit court which ruled that the city followed improper procedures in attempting to annex areas north and south of the city's boundaries. The trial court judges ruled that St. Charles failed to comply with the provisions of the Sawyers Act, § 71.015, RSMo Supp. 1983. The appeals were consolidated in the Eastern District of the Court of Appeals.

The appeals were transferred to this Court in accordance with Mo. Const. art. V, § 11 because the validity of § 71.015, RSMo Supp. 1983, as it applies to charter cities is in question. Therefore, jurisdiction lies in the Supreme Court pursuant to Mo. Const. art. V, § 3.

St. Charles became a Missouri constitutional charter city, not located in a first class charter county, on April 20, 1982. *See* Mo. Const. art. VI, § 19. On May 6, 1982, the St. Charles City Council passed Ordinances nos. 82–30 and 82–31, proposing two amendments to Article 1 of the city charter as permitted by Mo. Const. art. VI, § 20 for proposed amendments to city charters. One amendment called for the annexation of 2,200 acres of spillover growth on the south side of St. Charles and the other called for the annexation of 900 acres of spillover growth on the north side of the

city. An election on the proposals was held in both St. Charles and the areas at issue on August 3, 1982. On the proposal to annex the northern area (Ordinance 82–30), the results were:

|  | YES | NO |
|---|---|---|
| St. Charles | 4,071 | 1,783 |
| Area to be annexed | 36 | 570 |

On the proposal to annex the southern area (Ordinance 82–31), the results were:

|  | YES | NO |
|---|---|---|
| St. Charles | 3,965 | 1,766 |
| Area to be annexed | 71 | 505 |

Apparently the election was held in the areas to be annexed as well as in St. Charles in an attempt to comply with what is now § 71.015, RSMo Supp. 1983.

On September 1, 1982, a citizens committee presented signed petitions to the city council proposing only the south area amendment to the city charter. The petitions were signed by more than ten per cent of the electorate, another method of initiating charter amendments permitted by Mo. Const. art. VI, § 20. The city council then voted to submit the proposal only to voters in the City of St. Charles at a November 2, 1982, election. That election resulted in 6,673 votes for the proposal and 3,235 against. On December 1, 1982, St. Charles began to exercise jurisdiction over the south area.

Three quo warranto proceedings were filed, one on October 18, 1982, and two on November 23, 1982, on the information of the prosecuting attorney of St. Charles County at the relation of various property owners in the areas to be annexed and the St. Charles Fire Protection District. The petitioner questioned the authority of the City of St. Charles to exercise municipal jurisdiction, including jurisdiction for fire protection, over the lands of the property owner relators.

In all three actions, the trial court ultimately ruled that St. Charles had failed to comply with the annexation procedures set forth in the Sawyers Act, § 71.015, RSMo Supp. 1983, and therefore had no authority to exercise its jurisdiction over the areas in question. St. Charles appealed from all three judgments.

St. Charles contends that § 71.015, RSMo Supp. 1983, does not apply to constitutional charter cities. Instead it asserts that Mo. Const. art. VI, §§ 19 and 20, and § 82.090, RSMo 1978, set forth the only annexation procedures with which constitutional charter cities must comply.

The express language of § 71.015, RSMo Supp. 1983, purports to make its declaratory judgment and dual election provisions applicable to certain constitutional charter cities including the City of St. Charles:

> Should *any* city, town, or village, not located in any first class county which has adopted a constitutional charter for its own local government, seek to annex an area to which objection is made, the following shall be satisfied:
>
>     \*      \*      \*      \*      \*      \*
>
> (3) The city, town, or village shall fix a date for a public hearing on said ordinance and make a good faith effort to notify all fee owners of record within the area proposed to be annexed by certified mail, not less than thirty nor more than sixty days before said hearing and notify all residents of said area by publication of notice in a newspaper of general circulation qualified to publish legal matters in the county or counties where the proposed area is located at least two weeks prior to said hearing.
>
>     \*      \*      \*      \*      \*      \*
>
> (5) Following the hearing, should the governing body of the city, town, or village vote favorably by ordinance to annex the area then before proceeding as otherwise authorized by law or *charter* for annexation of unincorporated areas, file an action in the circuit court of the county in which such unincorporated area is situated, under the provisions of chapter 527, RSMo, *praying for a declaratory judgment* authorizing such annexation. . . .
>
> (6) If the court authorizes the city, town, or village to make an annexation, the legislative body of such city, town, or

village shall not have the power to extend the limits of the city, town, or village by such annexation *until an election is held at which the proposition for annexation is approved by a majority of the total votes cast in the city, town, or village and by a separate majority of the total votes cast in the unincorporated territory sought to be annexed.* However, should less than a majority of the total votes cast in the area proposed to be annexed vote in favor of the proposal, but at least a majority of the total votes cast of the city vote in favor of the proposal then the proposal shall again be voted upon in not more than one hundred twenty days *by both the registered voters of the city and the registered voters of the area proposed to be annexed.* If at least two-thirds of the qualified electors voting thereon are in favor of the annexation then the city may proceed to annex the territory. If the proposal fails to receive the necessary majority, no part of the area sought to be annexed may be the subject of another proposal to annex for a period of two years from the date of said election. The elections shall if authorized be held, except as herein otherwise provided, in accordance with the general state law governing special elections, and the entire cost of the election or elections shall be paid by the city, town or village proposing to annex the territory.

\* \* \* \* \* \*

(Emphasis added).

It is asserted that the amended Sawyers Act is repugnant to Mo. Const. art. VI, § 20 which provides:

Section 20. Amendment to city charters—procedure to submit and adopt. Amendments of any city charter adopted under the foregoing provisions may be submitted to the electors by a commission as provided for a complete charter. *Amendments may also be proposed by the legislative body of the city or by petition of not less than ten per cent of the registered qualified electors of the city, filed with the body or official having charge of the city elections, setting forth the proposed amendment.* The legislative body shall at once provide, by ordinance, that any amendment so proposed *shall be submitted to the electors at the next election held in the city not less than sixty days after its passage,* or at a special election held as provided for a charter. *Any amendment approved by a majority of the qualified electors voting thereon,* shall become a part of the charter at the time and under the conditions fixed in the amendment; and sections or articles may be submitted separately or in the alternative and determined as provided for a complete charter. (Emphasis added).

In support of its argument that § 71.015, RSMo Supp. 1983, conflicts with Mo. Const. art. VI, § 20, St. Charles relies upon earlier decisions of this Court in which we held that any annexation of adjacent land by a constitutional charter city constitutes an amendment of the city's charter. *See, e.g., State ex Inf. Major v. Kansas City,* 233 Mo. 162, 134 S.W. 1007 (1911); *City of Westport v. Kansas City,* 103 Mo. 141, 15 S.W. 68 (1891). Respondents argue that in determining whether a conflict has arisen between the Sawyers Act and the constitutional provisions relating to amendment of home rule charters, we should be guided by Missouri's constitutional home rule provision set forth in Mo. Const. art. VI, § 19(a). Section 19(a) defines the basis of power for self-government granted to home rule municipalities and has been adopted since our previous decisions interpreting the applicability of the Sawyers Act to constitutional charter cities. We now determine whether the annexation procedures set forth in the Sawyers Act apply to home rule charter cities in light of Mo. Const. art. VI, § 19(a) which reads as follows:

§ 19(a) **Power of charter cities, how limited**

Section 19(a). Any city which adopts or has adopted a charter for its own government, shall have all powers which the general assembly of the state of Missouri has authority to confer upon any

city, provided such powers are consistent with the constitution of this state and are not limited or denied either by the charter so adopted or by statute. Such a city shall, in addition to its home rule powers, have all powers conferred by law.

■ We have always adhered to the view that the charter of a home rule municipality, subject to certain limitations, is the organic law of the municipality. *See State ex rel. St. Louis F.F. Ass'n Local No. 73 v. Stemmler,* 479 S.W.2d 456, 457 (Mo. banc 1972). However, prior to the adoption of § 19(a), the powers which a home rule municipality could exercise through the constitutional grant of a right to adopt a charter, were limited to those powers which the people of the city expressly delegated to the city under the charter and those powers given by statute. *Kansas City v. Frogge,* 352 Mo. 233, 176 S.W.2d 498 (1944). Section 19(a) clearly grants to a constitutional charter city all power which the legislature is authorized to grant. *St. Louis Children's Hospital v. Conway,* 582 S.W.2d 687, 690 (Mo. banc 1979). Under Missouri's new model of home rule, even in the absence of an express delegation by the people of a home rule municipality in their charter, the municipality possesses all powers which are not limited or denied by the constitution, by statute, or by the charter itself. The principal drafter of section 19(a) described the present role of a home rule charter under the amendment as follows:

"[M]unicipal powers now come directly to the city from the constitution unless the charter rejects the powers or limits them in some way. In the past, powers came to the city through both the constitution and the charter. In order to cause the power to flow from the constitution, it was necessary for the city to claim the power by mentioning it in the charter. Thus in the past the charter could be thought of as a receptacle designed to catch and hold powers; after amendment the charter is best thought of as a shield designed to hold back powers that otherwise would automatically vest in the city...." Westbrook, *Charter Drafting Under the New Municipal Home Rule*

*Provisions,* Missouri Municipal Review, p. 18, March, 1973.

Appellant's contention that the Sawyers Act conflicts with the constitutional provisions relating to charter amendment necessarily assumes that an annexation of adjoining land by a charter city is a charter amendment. This was the position taken in a number of our earlier decisions, beginning with *City of Westport v. Kansas City.* 15 S.W.2d at 69. *See St. Louis County v. City of Florissant,* 406 S.W.2d 281 (Mo. banc 1966); *City of Hannibal v. Winchester,* 391 S.W.2d 279 (Mo.banc 1965); *McConnell v. City of Kansas City,* 282 S.W.2d 518 (Mo.1955); *State ex Inf. Taylor ex rel. Kansas City v. North Kansas City,* 360 Mo. 374, 228 S.W.2d 762 (banc 1950); *State ex Inf. Major v. Kansas City,* 233 Mo. 162, 134 S.W. 1007 (1911). However, all of the aforementioned cases in which we construed the actions of a city in extending its boundaries to be a charter amendment were decided before the adoption § 19(a) as the new model of home rule in Missouri.

■ Authorities have never been in agreement as to whether the extension of a city's boundaries is an amendment of its charter, and we need not decide whether we would maintain our earlier position on this issue had § 19(a) not been adopted. *See generally,* 62 C.J.S. *Municipal Corporations* § 69 (1949); Annot., 64 A.L.R. 1371 (1929). We do hold that under § 19(a) of article 6 of the Constitution, the annexation of contiguous land by a constitutional charter city is not an amendment of the city's charter. In our view, the adoption of § 19(a) in 1971 rendered *City of Westport* and its progeny obsolete.

■ Under § 19(a) it is no longer necessary for a home rule charter city to claim the power of annexation of a particular parcel of land by charter amendment because, even in the absence of a charter provision, the power to annex is vested in the municipality by virtue of the direct grant of power in § 19(a). In our previous decisions involving annexation by constitutional charter cities, decided before adop-

tion of § 19(a), this Court felt compelled to find some grant in the charter of the annexing city, channelling to such city the power to annex. Now we need only determine whether a city's extension of its boundaries contravenes some limitation set forth in the charter, a state statute, or the Constitution.

■ Because a constitutional charter city is empowered to annex adjacent land without first amending its charter, there is no conflict between the Sawyers Act and Mo. Const. art. VI, § 20. Further, there can be no question that St. Charles was required to comply with the annexation procedures set forth in the Sawyers Act. As we have noted, the power conferred upon a constitutional charter city by virtue of § 19(a) is subject to whatever limitations are imposed upon that power by the Constitution, by its charter or by statute. We must recognize explicit limitations on that power in the Sawyers Act, § 71.015, RSMo Supp. 1983.

■ Under § 19(a), a constitutional charter city is prohibited from exercising its home rule power in a manner that is inconsistent with a state statute. *Enright v. Kansas City*, 536 S.W.2d 17, 19 (Mo. banc 1976). By enacting § 71.015, the General Assembly has established procedures for annexation that must be followed "[s]hould any city ... not located in any first class county which has adopted a constitutional charter for its own local government seek to annex an area...." Since St. Charles failed to comply with the procedures set forth in the Sawyers Act, it had no jurisdiction over the areas in question.

The judgment of the trial court is affirmed.

All concur.