**YELLOW FREIGHT SYSTEMS, INC.
Defendants–Respondents,**

v.

**MAYOR'S COMMISSION ON HUMAN
RIGHTS OF the CITY OF SPRING-
FIELD, Missouri, and Betty L. Shortt,
Plaintiffs–Appellants.**

No. 72458.

Supreme Court of Missouri,
En Banc.

June 19, 1990.
Rehearing Denied July 31, 1990.

Dennis Budd, Asst. City Atty., Springfield, for plaintiffs-appellants.

Ronald E. Sandhaus and David B. Mandelbaum, Overland Park, Kan., for defendants-respondents.

BILLINGS, Judge.

The controlling issue in this case is whether the Mayor's Commission on Human Rights ("Commission") of Springfield, Missouri, had the authority to find plaintiff violated a city ordinance in connection with a complaint filed by an employee alleging unlawful discrimination in the termination of her employment. The judgment of the trial court enjoining the Commission from enforcing its order for reinstatement and backpay for the employee is affirmed.

The facts giving rise to the order are more fully set out in a prior opinion by the court of appeals which reversed and remanded the case on procedural grounds. *See Yellow Freight System v. Mayor's Com'n.*, 737 S.W.2d 250 (Mo.App.1987). Briefly, the facts pertinent to this decision are as follows: An ordinance, *Chapter 18A, §§ 1 thru 29 Springfield City Code*, was adopted by the City of Springfield, Missouri, a home rule charter city. This ordinance established the Mayor's Commission on Human Rights, defined its purpose and powers, and granted the right to appeal. The ordinance purported to create a municipal agency with the power to hear contested cases of discrimination in employment and housing, and give relief in accordance with its stated purpose. The ordinance also provided that an appeal or enforcement of the Commission's decision could be brought in the Circuit Court of Greene County and that the city attorney could bring proceedings in the City of Springfield's Municipal Court for punishment of anyone violating the ordinance.

The Commission ordered Yellow Freight Systems, Inc. ("Yellow Freight"), to reinstate a terminated employee and awarded her backpay from her termination date. Yellow Freight sought relief in circuit court, seeking among other things a declaration that the Commission's decision violated provisions of the Missouri Constitution, exceeded statutory authority, exceeded authority granted by City Charter, and requested injunctive relief against the Commission. The trial court granted the relief requested by Yellow Freight and defendants appealed.

A majority of the court of appeals concluded the order of the Commission was invalid to the extent it reinstated the terminated employee and awarded back pay but remanded the case to permit proceedings in municipal court for violation of the ordinance. The dissent, authored by Maus, J., concurred with the court in most respects but dissented as to the portion of the opinion that remanded the case to municipal court. This Court borrows liberally from that dissent without the benefit of quotation marks and with minor modifications.

The City of Springfield, the Commission, and the terminated employee, Mrs. Betty Shortt, argue that the Commission's actions are authorized by implication in *§ 213.020.3 RSMo, 1986*, by the general grant of power found in *Missouri Constitution art. VI, § 19*, and *§ 1.3 Springfield City Code*. The Court does not agree.

■ The trial court made findings of fact and conclusions of law on all issues presented. Without discussion, the Court affirms those findings and conclusions upon the subsidiary issues presented. The disposition of the appeal is controlled by the finding of the trial court that the Mayor's Commission had no jurisdiction to hear

and determine an allegation of a violation of a city ordinance by reason of *Mo. Const. art. V, § 23.* Its final judgment was "that defendant Commission's order ... [is] null, void, of no effect, and for naught." The Court affirms that judgment.

The basic issue can be placed in proper perspective only by consideration of the nature of the remedy provided by the ordinance. "The instant ordinance creates a right and liability which do not exist at common law and prescribes the remedy." *St. Louis–San Francisco Ry. Co. v. Mayor's Com'n. on Human Rights and Community Relations of the City of Springfield, Mo.,* 572 S.W.2d 492, 493 (Mo.App. 1978) (The validity of the ordinance was not raised or considered.) The cause of action is for the benefit of the individual. It is directly based upon an alleged violation of that ordinance. The ordinance provides for the determination of that alleged violation and the amount of recovery by an administrative agency of the city.

The violation of an ordinance may establish an element of tortious conduct in a common law or statutory tort action cognizable in the circuit court. *See Breeding v. Dodson Trailer Repair, Inc.,* 679 S.W.2d 281, 287 (Mo.banc 1984). A municipal corporation may by ordinance, within the scope of its police power, regulate conduct and prescribe a penalty for violation of an ordinance. *Marshall v. Kansas City,* 355 S.W.2d 877, 881 (Mo.banc 1962); 93 *A.L.R.2d* 1012 (1964). A well-established general rule illustrates the basic limitation upon the authority of a city to create a cause of action for recovery by an individual: "[A] municipal corporation cannot create by ordinance a right of action between third persons or enlarge the common law or statutory duty or liability of citizens among themselves." 6 E. McQuillin, *Municipal Corporations § 22.01* (3rd ed. Rev. 1988). That limitation is recognized in Missouri.

It has been repeatedly ruled in this state that a city has no power, by municipal ordinance, to create a civil liability from one citizen to another, nor to relieve one citizen from that liability by impos-

ing it on another. *Norton v. City of St. Louis,* 97 Mo. 537, 542, 11 S.W. 242; *Sanders v. Railroad,* 147 Mo. 411, 426, 48 S.W. 855; *Becker v. Schutte,* 85 Mo. App. 57, 62; *City of St. Louis v. Conn. Ins. Co.,* 107 Mo. 92, 96, 17 S.W. 637, 28 Am.St.Rep. 402. The application of this doctrine to cases based on negligence has led to differences of opinions and conflicting decisions (*Sludor v. Transit Co.,* 189 Mo. 107, 135, 88 S.W. 648, 5 L.R.A. [N.S.] 186, and the dissenting opinion of Judge Marshall in that case), but as applied to contractual and similar obligations and liabilities it has never been questioned. (*See, also, State ex rel. [Star Publishing Co.] v. Associated Press,* 159 Mo. 410, 60 S.W. 91, 51 L.R.A. 151, 81 Am.St.Rep. 368).

*City of Joplin v. Wheeler,* 173 Mo.App. 590, 604–05, 158 S.W. 924, 928–29 (1913); *Marshall v. Kansas City,* 355 S.W.2d at 882–83.

This basic limitation is respected by the provisions of the Constitution of Missouri, statutes, and rules governing violations of ordinances. The relevant provision of the constitution states that "[a] municipal judge shall hear and determine violations of municipal ordinances in one or more municipalities." *Mo. Const. art. V, § 23. Section 479.010 RSMo, 1986,* provides "[v]iolations of municipal ordinances shall be tried only before divisions of the circuit court as hereinafter provided in this chapter." "Ordinance violation" is the subject of *Rule 37* which in part states: *"Rule 37* governs the procedure in all courts of this state having original jurisdiction of ordinance violations and the disposition of statutory and ordinance traffic offenses in a traffic violations bureau." *Rule 37.01.* "All ordinance violations shall be prosecuted by information." *Rule 37.34(a).*

It must be noted that it has been held that the statute proscribing employment discrimination and establishing the State Commission on Human Rights did not unconstitutionally delegate judicial power to an administrative agency even though the Commission was granted power to award backpay to complainants. *Percy Kent Bag*

*Co. v. Missouri Com'n. on Human Rights,* 632 S.W.2d 480, 485 (Mo.banc 1982). However, that case does not aid appellants. It is not necessary to analyze all the reasons the legislative power of a charter city is not coextensive with that of the state. It is sufficient to observe that it is within the authority of the state to create the cause of action described above. Further, the state is subject to no constitutional restriction such as that contained in *Mo. Const. art. V, § 23.*

As stated, the cause of action purportedly created by the ordinance is for the benefit of an individual. Under its terms, recovery is predicated upon the determination of a violation of the ordinance. That ordinance provides that determination and any recovery awarded is to be enforced by the Commission represented by the City Attorney. This is a procedure to determine the violation of an ordinance which the constitutional provision, statute and rules provide must be initiated and heard before a municipal judge. For this reason alone, the Court could find the Commission's determination that the ordinance was violated is of no force or effect. However, the Court does not imply that a municipal court has the jurisdiction to award any complainant back wages or any other recovery.

■ Appellants seek to uphold the determination, the award, and the ordinance upon the basis of *Mo. Const. art. VI, § 19(a),* adopted in 1971. *See Gates v. City of Springfield,* 744 S.W.2d 487 (Mo. App.1988), concerning the application of that section to a previously adopted charter. But, it may be assumed that the validity of the ordinance is to be measured by *§ 19(a)* which says:

> Any city which adopts or has adopted a charter for its own government, shall have all powers which the general assembly of the state of Missouri has authority to confer upon any city, provided such powers are consistent with the constitution of this state and are not limited or denied either by the charter so adopted or by statute. Such a city shall, in addition to its home rule powers, have all powers conferred by law.

That section has been construed in general terms.

Section *19(a)* clearly grants to a constitutional charter city all power which the legislature is authorized to grant. *St. Louis Children's Hospital v. Conway,* 582 S.W.2d 687, 690 (Mo.banc 1979). Under Missouri's new model of home rule, even in the absence of an express delegation by the people of a home rule municipality in their charter, the municipality possesses all powers which are *not limited or denied by the constitution, by statute, or by the charter itself.* (Emphasis added.) *State ex inf. Hannah v. City of St. Charles,* 676 S.W.2d 508, 512 (Mo.banc 1984). *See also Gates v. City of Springfield,* 744 S.W.2d at 490.

The scope of the powers which the General Assembly has authority to confer upon a city has not been clearly defined. The scope of such powers must be subject to some limitation.

One state cannot without the consent of the other states divide itself up into a number of independent sovereignties, and consequently a municipal corporation cannot be made a free city wholly immune from legislative control. It is an essential element of all constitutional provisions establishing the principle of municipal home rule that the constitution and general laws of the state shall continue in force within the municipalities which have framed their own charters, and that *the power of the municipality to legislate shall be confined to municipal affairs.....* (Emphasis in original). *Kansas City, Mo. v. J.I. Case Threshing Mach. Co.,* 337 Mo. 913, 923, 87 S.W.2d 195, 200 (banc 1935).

The state by granting to plaintiff city the right to adopt and frame a charter for its own government did not confer upon plaintiff city the right to assume under its charter all of the powers which the state may exercise within the city, but conferred the right to assume those powers incident to it as a municipality. *Kansas City v. Frogge,* 352 Mo. 233, 243, 176 S.W.2d 498, 503 (1943). It seems logi-

cal that if a city under *§ 18(b)* could not, by the adoption of that charter, expressly assume a power not incidental to it as a municipality, then the legislature has no authority to confer that power under *§ 19(a)*.

The following general limitation is consistent with that statement and has long been recognized. *"A charter* or ordinance enacted under *§ 18(b) may not 'invade the province of general legislation'* involving the public policy of the state as a whole." *Flower Valley Shopping Center, Inc. v. St. Louis County,* 528 S.W.2d 749, 754 (Mo.banc 1975) (Emphasis added.) In that case, the court was referring to an express assumption of power under *§ 18(b).* Nonetheless, that general limitation would appear to be applicable to an implied grant under *§ 19(a).*

In *General Motors Corporation v. Fair Employment, Etc.,* 574 S.W.2d 394, 397 (Mo.banc 1978), the circuit court sustained an employer's constitutional challenge to the validity of the fair employment practices ordinance of the City of St. Louis. This Court noted the existence of the constitutional question but expressly did not decide that question. In this case, the denial of the power to create the cause of action described above need not rest upon a specific definition of the scope of the powers the legislature is authorized to delegate to a city charter city under *art. VI, § 19(a).*

It is clear the scope of the powers vested in a municipality by reason of the general grant in *§ 19(a)* is subject to the limitations contained in that constitutional section. That is, such powers must be consistent with the constitution of this state and not limited or denied by the charter so adopted or by statute. For the reasons stated above, the power of the city to provide for a determination of a violation of the ordinance by the Mayor's Commission is limited by the constitution, statutes and rules.

■ Moreover, the attempt to vest such authority in the Commission is contrary to the city charter. *Charter art. XV, § 15.1,* provides:

*"All boards or commissions* established by this Charter or under authority granted herein to the council *shall be* classified either as (1) *advisory boards,* established for the purposes of investigation into general *or* specific problems affecting either the city as a whole or a particular department or agency thereof and making recommendations, or (2) *administrative boards* to which the power and duty of administering a department or agency of the city is entrusted with the necessary authority vested in such board to carry out such power and duties." (Emphasis added.)

Under that section, the power of an administrative board is to administer a department or agency of the city. The nature of that authority is exemplified by a subsequent section of *Charter art. XV, § 15.15,* which provides in part: "Each of the administrative boards established by this article shall take charge of and operate the properties, institutions and facilities entrusted to them and shall have the care, custody, and supervision thereof, and in order to carry out their duties, shall have the following general powers: . . . ." It is obvious the Mayor's Commission of Human Rights is not an administrative commission or board, as defined in the charter of the City of Springfield. That being so, under *§ 15.1,* it is limited to being an *advisory board* "established for the purposes of investigation into general or specific problems affecting either the city as a whole or a particular department or agency thereof and making recommendations. . . ." (Emphasis added.)

■ This express limitation of *§ 15.1* in the structure of municipal government is not obliterated, as appellants contend, by *Charter § 1.3 of art. I* that in relevant part reads:

The city shall have all powers of local self-government and home rule, and all powers possible for any city to have under the constitution and laws of Missouri, or those powers which the legislature would be competent to grant; except as prohibited by the constitution or laws of the state, the city may exercise all municipal powers, functions, rights, privileges

and immunities of every name and nature whatsoever.

The general grant of power by constitutional § 19(a) is conditioned or restricted to the extent such power is limited or denied by the charter. The specific limitation of *Charter § 15.1* limits the general grant of "all powers" under constitutional § 19(a). To hold otherwise would render the charter meaningless. By reason of limitation of the city's charter, the Mayor's Commission had no authority to determine that the respondent had violated the ordinance, and that determination is void.

■ Finally, the appellants rely upon § 213.020.3 RSMo, 1986, which reads:

Prior to August 13, 1986, the governing body of any city, town, village or county may adopt an ordinance or ordinances which authorizes the creation of a human relations or equal opportunity enforcement commission with the power and authority *to seek* to eliminate and prevent discrimination in employment, housing and public accommodation and to establish other related programs." (Emphasis added.)

The constitutional limitations upon that subsection have been discussed. That subsection does not aid appellants.

It is not necessary to consider if § 213.030 evidences a legislative intent that the State Commission on Human Rights preempts the field in respect to the existence of administrative agencies to enforce human rights. *See City of St. Louis v. Missouri Com'n. on Human Rights*, 517 S.W.2d 65 (Mo.1974); *Union Electric Company v. City of Crestwood*, 499 S.W.2d 480 (Mo.1973); *State ex rel. O'Brien v. Roos*, 397 S.W.2d 578 (Mo.1965). A guiding principle holds that "laws providing for penalties and forfeitures are always given only prospective application, and retrospective application would render such a statute unconstitutional." *U.S. Life Title Ins. Co. v. Brents*, 676 S.W.2d 839, 842 (Mo.App. 1984). Appellants cite no authority to establish § 213.020.3, adopted in 1986, can be given retroactive effect to validate an ordinance previously adopted and last amended in 1982.

Fundamentally, the language of the subsection itself demonstrates it does not authorize the city to vest the Mayor's Commission with authority to determine violations of city ordinances. The construction of that statute is controlled by the rule that "the express mention of one thing implies the exclusion of another would also weigh against the inclusion of the additional restriction since, where special powers are expressly conferred or special methods are expressly prescribed for the exercise of power, other powers and procedures are excluded." *Brown v. Morris*, 365 Mo. 946, 955, 290 S.W.2d 160, 166 (banc 1956).

*Section 213.030*, in terms similar to § 213.020.3, vests the State Commission on Human Rights with the power and duty to "seek to eliminate and prevent discrimination." Yet, in addition to that phrase, § 213.030 expressly grants the State Commission power and authority to hold hearings and pass upon complaints of violations of state law in accordance with procedure proscribed by § 213.075. A commission created by virtue of § 213.020.3 can *seek* to eliminate discrimination as an advisory commission. Nothing in subsection 213.020.3 gives every city, town, village, or county the power to create a cause of action for the violation of an anti-discrimination ordinance and to create an agency to determine and enforce a violation of that ordinance. The failure of the legislature to include in § 213.020.3 an express grant of power to determine violations and make awards, such as that deemed necessary in § 213.030, establishes its intent that such power is not included in § 213.020.3.

The Court finds the Mayor's Commission had no power to determine the respondent had violated an ordinance of the city.

The judgment of the trial court is affirmed.

ROBERTSON, RENDLEN, HIGGINS and COVINGTON, JJ., concur.

BLACKMAR, C.J., and HOLSTEIN, J., not sitting.