**CITY OF KANSAS CITY, Missouri,**
**Respondent,**

**v.**

**Georgia J. CARLSON, Appellant.**

**No. WD 70576.**

Missouri Court of Appeals,
Western District.

June 23, 2009.

Motion for Rehearing and/or Transfer to
Supreme Court Denied July 28, 2009.

Application for Transfer Denied
Oct. 6, 2009.

---

Jonathan Sternberg, Kansas City, MO, Counsel for Appellant.

P. Benjamin Cox, Kansas City, MO, Counsel for Amicus Curiae

Lowell C. Gard, Kansas City, MO, Counsel for Respondent.

Before THOMAS H. NEWTON, C.J., HAROLD L. LOWENSTEIN, and JAMES M. SMART, JR., JJ.

THOMAS H. NEWTON, Chief Judge.

Ms. Georgia Jean Carlson appeals the circuit court's judgment finding her guilty of violating Kansas City's municipal smoking ban. Ms. Carlson contends the judgment is invalid because the City's ordinance is in conflict with Missouri's Indoor

Clean Air Act (ICAA), §§ 191.765–191.777.[1] We affirm.

## Factual and Procedural Background

JC Sports Bar is a bar and billiard parlor in Kansas City that posts signs stating "Nonsmoking Areas are Unavailable." In June of 2008, Kansas City Ordinance No. 080073 went into effect. The ordinance prohibits smoking in enclosed public places and places of employment, with some exceptions for hotels and casinos. KANSAS CITY, MO., CODE §§ 34–471–34–481 (2008). It also provides that "A person having control of a public place or place of employment and who fails to comply with the provisions of this Article shall be guilty of an ordinance violation[.]" *Id.* at § 34–476(b). In July of 2008, the Kansas City Health Department cited Ms. Carlson for allowing patrons to smoke in JC's.

In municipal court, Ms. Carlson moved to dismiss the charge, contending that the ordinance conflicted with the ICAA and was thus preempted. The municipal court found Ms. Carlson guilty and sentenced her to a fine of $100. Ms. Carlson appealed to the circuit court, which held a trial *de novo* on stipulated facts. Ms. Carlson again moved to dismiss the charge, contending that the ordinance conflicted with the ICAA. After hearing argument, the circuit court rejected Ms. Carlson's contention. It noted that the state legislature "could have but did not expressly provide that there could be no further regulation of smoking by any other authority" and was "not convinced that a definitional ex-

clusion of certain businesses" was equivalent to preemption. It ordered Ms. Carlson to pay the $100 fine and court costs. Ms. Carlson appeals.[2]

## Standard of Review

■ In a court-tried case we sustain the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Carter v. City of Pagedale*, 982 S.W.2d 744, 745 (Mo.App. E.D.1998). Because this case was tried on stipulated facts, the only question for our review is whether the trial court made the proper legal conclusions. *Id.* Whether a city exceeds its statutory authority in passing an ordinance is an issue we review *de novo*. *Clifford Hindman Real Estate, Inc. v. City of Jennings*, 283 S.W.3d 804, 806–07 (Mo.App. E.D. 2009).

## Legal Analysis

■ In her sole point on appeal, Ms. Carlson argues that the City's ordinance irreconcilably conflicts with state law. She contends that because the ICAA excludes bars such as JC's from its definition of public places, it affirmatively permits smoking in JC's while Kansas City's ordinance prohibits it. The City, however, maintains that the ICAA does not "permit" smoking in bars and billiard parlors. Rather, it leaves those places unregulated, which creates no conflict with municipal regulation that enlarges on the state scheme.

---

1. All statutory references are to RSMo 2000 and the Cumulative Supplement 2008 unless otherwise indicated.

2. General Cigar Holdings, Inc. filed an Amicus Curiae brief in support of Ms. Carlson. General Cigar manufactures cigars that are sold at three tobacco stores in Kansas City. The ICAA exempts places "where more than

fifty percent of the volume of trade or business carried on is that of the blending of tobaccos or sale of tobaccos, cigarettes, pipes, cigars, or smoking sundries." § 191.769(4). General Cigar argues that the City's ordinance is also in conflict with section 191.769(4).

■ Kansas City is organized under article VI, section 19 of the Missouri Constitution as a constitutional charter city. *State ex rel. Chastain v. City of Kansas City*, 289 S.W.3d 759, 761 (Mo.App. W.D. 2009). Under section 19(a), the City has:

all powers which the general assembly of the state of Missouri has authority to confer upon any city, provided such powers are consistent with the constitution of this state and are not limited or denied either by the charter so adopted or by statute. Such a city shall, in addition to its home rule powers, have all powers conferred by law.

Section 19(a) thus gives Kansas City "all the power which the legislature could grant," unless otherwise limited by the constitution, statutory law, or its charter. *Cape Motor Lodge, Inc. v. City of Cape Girardeau*, 706 S.W.2d 208, 210 (Mo. banc 1986).

■ This section of the Missouri Constitution was adopted in 1971. Prior to the amendment's adoption, Missouri courts sought specific authority for exercises of municipal power. *Id.* The intent behind amending section 19(a) was to "insure the supremacy of the legislature while at the same time putting only minimal and necessary limitations on the power of municipalities." Thomas N. Sterchi, *State–Local Conflicts Under the New Missouri Home Rule Amendment*, 37 Mo. L.Rev. 677, 689 (1972). Thus, "[u]nder Missouri's new model of home rule ... the municipality possesses all powers which are not limited or denied by the constitution, by statute, or by the charter itself." *Yellow Freight Sys., Inc. v. Mayor's Comm'n on Human Rights*, 791 S.W.2d 382, 385 (Mo. banc 1990) (emphasis removed) (quoting *State ex inf. Hannah v. City of St. Charles*, 676 S.W.2d 508, 512 (Mo. banc 1984)). Consequently, because the City's power is derived from amended section 19(a), the instant case requires us to ask not whether the City had authority for its ordinance, but whether its authority to enact the ban was denied by other law. *See Cape Motor Lodge*, 706 S.W.2d at 210.

■ Ms. Carlson bases her argument in RSMo section 71.010. The statute limits the City's authority by providing that:

[a]ny municipal corporation ... having authority to pass ordinances regulating subjects, matters and things upon which there is a general law of the state ... shall confine and restrict its jurisdiction and the passage of its ordinances to and in conformity with the state law upon the same subject.

Thus, Kansas City may only enact ordinances "in conformity" with state law on the same subject. If the city ordinance conflicts with a general law of the state, it is void. *McCollum v. Dir. of Revenue*, 906 S.W.2d 368, 369 (Mo. banc 1995).

■ An ordinance and state statute conflict if "their express or implied provisions are so inconsistent and irreconcilable that the statute annuls the ordinance." *Crackerneck Country Club, Inc. v. City of Independence*, 522 S.W.2d 50, 51 (Mo.App. 1974). If the ordinance prohibits what the statute permits, or permits what the statute prohibits, then the two are in conflict. *Id.* For example, where an ordinance prohibited self-service gas pumps and self-service pumping, but a state regulation expressly stated that self-service gas pumps were permitted, the ordinance was in direct conflict with the state regulation and thus invalid. *Page W., Inc. v. Cmty. Fire Prot. Dist. of St. Louis*, 636 S.W.2d 65, 67–68 (Mo. banc 1982). However, if the ordinance merely prohibits *more* than the state statute, the two measures are not in conflict. *Kansas City v. LaRose*, 524 S.W.2d 112, 117 (Mo. banc 1975). In *LaRose*, a state crime required a *mens rea* element, while a municipal ordinance did

not—thus criminalizing more conduct than the state statute. *Id.* However, there was no conflict between the two because the ordinance had simply "gone further" and expanded the prohibition. *Id.*

Consequently, in the present case, if the ICAA were read to affirmatively permit smoking in bars and billiard parlors meeting its condition, then the municipal ordinance's prohibition would be in conflict with the state law. However, if the ordinance merely enlarges the state law, the two laws are not in conflict.

### The laws at issue

■ The ICAA was enacted "to provide persons with access to smoke-free air in certain areas in certain public places." L.1992, S.B. Nos. 509, 442 & 679. It outlaws smoking in "public places" except in designated areas. §§ 191.765–191.777. The definition of "public place" includes "any enclosed indoor area used by the general public or serving as a place of work." § 191.765(5). Several types of areas "are not considered a public place." § 191.769. Among the section's exclusions from the definition of "public places" are:

> Bars, taverns, restaurants that seat less than fifty people, bowling alleys and billiard parlors, which conspicuously post signs stating that 'Nonsmoking Areas are Unavailable'[.]

§ 191.769(5).[3] Thus, the ICAA does not require bars and billiard parlors such as JC's to provide non-smoking areas.

The City's municipal ban prohibits smoking in "all enclosed places of employment within the City" and in "all enclosed public places within the City." KANSAS CITY, MO., CODE § 34–473. Under the ordinance, a public place is "any enclosed area to which the public is invited or in which the public is permitted." *Id.* at § 34–472. Private residences and a percentage of hotel rooms are excluded from the ordinance; casino gaming areas are exempted until surrounding counties pass similar bans. *Id.* at §§ 34–472, 34–475, 34–480. The ordinance, however, does not exempt bars and billiard parlors such as JC's from its restrictions.

Ms. Carlson argues that the ICAA's exclusion of bars and billiard parlors from its prohibition against smoking must be read as "positive law permitting that conduct, such that a city has no authority to prohibit it entirely." Thus, although the ICAA does not give express affirmative authority to JC's to permit smoking, she contends such a meaning should be implied because the ICAA exempts JC's from its definition of "public place." Consequently, she argues, the ICAA permits smoking in JC's while the ordinance prohibits it, causing the statute and the ordinance to be in conflict.

---

**3.** Later enacted sections 191.775 and 191.776 prohibit smoking in schools, school buses, and childcare facilities. Section 191.777 provides that nothing in these two latter sections relating to educational facilities prohibits "local political subdivisions or local boards of education from enacting more stringent ordinances or rules." Appellant argues that section 191.777 shows that the legislature provides expressly for "anti-preemption" when it intends to leave open an area of regulation. However, we do not read for express "anti-preemption" to determine the validity of the City's ordinance. Rather, because of the authority granted to home rule cities, we assume the validity of the ordinance unless it is barred by other law. *See* discussion *infra*; *Cape Motor Lodge, Inc. v. City of Cape Girardeau,* 706 S.W.2d 208, 211 (Mo. banc 1986) ("the emphasis no longer is whether a home rule city has the authority to exercise the power involved; the emphasis is whether the exercise of that power conflicts with the Missouri Constitution, state statutes or the charter itself.").

We presume ordinances are valid and lawful. *McCollum*, 906 S.W.2d at 369. We follow the principle of *"ut res magis valeat quam pereat* (that the thing may rather have effect than be destroyed)." *LaRose*, 524 S.W.2d at 117. We construe ordinances to be upheld "unless the ordinance is expressly inconsistent or in irreconcilable conflict with the general law of the state." *McCollum*, 906 S.W.2d at 369.

We read statutes according to their plain and ordinary language. *Id.* A plain reading of the ICAA does not support Ms. Carlson's contention that it authorizes those places it exempts to permit smoking or makes them immune from local smoking regulation. Rather, the ICAA simply excludes those places meeting its conditions from compliance with section 191.767.

The failure of the legislature to include an express grant of power may establish that it intended such a power not be included. *See Yellow Freight Sys.*, 791 S.W.2d at 387. The ICAA states that its regulation of smoking in "public places" does not include bars such as JC's. It does not state, "A permit to smoke in bars is affirmatively granted." Had the Missouri legislature intended to grant affirmative authority to these places to allow smoking, it could have so stated. *See Cape Motor Lodge*, 706 S.W.2d at 212. Nor does the ICAA state, "Smoking in bars cannot be prohibited by cities." Had the legislature intended to prohibit municipalities from further regulation it could have so stated. *See Frech v. City of Columbia*, 693 S.W.2d 813, 815 (Mo. banc 1985) (city was not barred from enacting an ordinance where the statute did not prohibit it). Thus, we

do not agree, as Ms. Carlson argues, that section 191.769(5) "specifically exempts [bars and billiard parlors] from indoor smoking regulation" such that the ordinance is in conflict.[4]

Ms. Carlson, however, asks us to look beyond the statute's plain language to read an implied grant of authority to permit smoking such that the city's ordinance is in conflict. She relies on several Missouri cases to argue that where a statute exempts conduct, the statute must be read as permitting that conduct, and that the ICAA's exemption of bars and billiard parlors from its ban must thus be read as an affirmative authorization of smoking in those places.

In *City of St. Louis v. Klausmeier*, a municipal ordinance setting a standard requiring skimmed milk to contain 10.5 percent solids was held to conflict with a state statute that set a standard of only 9.25 percent. 213 Mo. 119, 112 S.W. 516 (1908). The conflict occurred because "a person might sell skimmed milk containing 9.25 percent of solids, as prescribed by the state law, and still be guilty of an offense under the ordinance. In other words, the ordinance denounces that to be a crime which the statute authorizes to be done." *Id.* at 519. Similarly, in *City of St. Louis v. Stenson*, an ordinance that prohibited commercial vehicles over thirty-three feet in length on portions of a highway was held to conflict with a statute that "authorize[d] the use of the highways ... by all ... vehicles that do not exceed 45 feet in length" because the ordinance prohibited what the statute permitted. 333 S.W.2d 529, 533–34 (Mo.App.1960). However, we

---

4. The statute also appears to contemplate further regulation by municipalities. *See* § 191.767.2 (providing that smoking areas may be designated in public places "except in places in which smoking is prohibited by the fire marshal or by other law, ordinance or regulation").

find neither of these cases to be directly on point. We also note that both cases were decided prior to Missouri's constitutional enactment of section 19(a).[5]

The ICAA is a prohibitory statute: "A person shall not smoke in a public place or in a public meeting except in a designated smoking area." § 191.767. Section 191.769(5) excludes bars and billiard parlors from the ICAA's definition of public places, thus placing them outside section 191.767's ban. *Klausmeier* and *Stenson* do not tell us that a state exemption from a statutory prohibition is an authorization. Rather, the statutes at issue in *Klausmeier* and *Stenson* set standards for authorized conduct—the level of solids in milk, the length of motor vehicles on highways. The ordinances at issue in *Klausmeier* and *Stenson* set a different standard and expressly conflicted with the state laws because conduct was affirmatively authorized under the state law, yet illegal under the municipal ordinance.

The laws here are much more analogous to those in *LaRose* than to the standard-setting prescriptions in *Klausmeier* and *Stenson.* In *LaRose,* decided after Missouri's enactment of section 19(a), the state law prohibited conduct and the municipal ordinance prohibited more; although they prohibited the same type of conduct, because the ordinance simply went further, there was no conflict between the two. 524 S.W.2d at 117.

Ms. Carlson also argues that the City is "powerless, by definition or otherwise, to embrace in the Ordinance a class of places as 'public places' for smoking regulation and subject them to penalties for violating the Ordinance, which by § 191.769(5) are within the exception of the terms of the ICAA defining the class that are in fact 'public places.'" [6] She relies on *City of Moberly v. Hoover,* 93 Mo.App. 663, 67 S.W. 721 (1902), and *City of St. Louis v. Meyer,* 185 Mo. 583, 84 S.W. 914 (1904) for this argument.[7] In *Moberly,* a bookseller was charged with failure to comply with a city ordinance levying a tax on "peddlers." 67 S.W. at 721. Under state law, the term "peddler" was defined to exclude booksellers. *Id.* The court held that the city ordinance and charter had to be construed in light of the state law and, thus, could not be read to include booksellers. *Id.* at 722. Similarly, in *Meyer,* a farmer was convicted of selling his products without a license, as required by a city ordinance applying to peddlers and hawkers. 84 S.W. at 914–15. However, under state law, a seller of agricultural products was not a "peddler" or a "hawker." *Id.* at 917. The *Meyer* court found "that a class cannot be embraced in the ordinance that the statute expressly eliminates from the class defined by the statute to be peddlers." *Id.*

However, we do not agree that Missouri law holds that there is an inherent conflict where a statute and an ordinance define terms differently. Both *Meyer* and *Mob-*

---

5. Appellant also relies on *Page Western, Inc. v. Community Fire Protection District of St. Louis County,* 636 S.W.2d 65 (Mo. banc 1982). In that case, the Missouri Supreme Court struck down an ordinance where the ordinance expressly conflicted with the regulation at issue. *Id.* at 68.

6. General Cigar also addresses this argument.

7. Appellant also relies on *City of Lake Lotawana v. Meagher,* 581 S.W.2d 105 (Mo.App. W.D. 1979). However, *Lake Lotawana* deals with a fourth-class city, not a charter city, and its finding of an invalid ordinance was based on the lack of an express grant of "specific statutory authority" and an absence of delegation of the state's police power. *See id.* at 106–07. Thus, its holding is not applicable to the issues in the instant case.

*erly* were decided over a century ago, in light of different constitutional provisions, and the Missouri Supreme Court has since held that state and municipal law were not inherently in conflict because of differences in their defined terms. *State ex rel. Teefey v. Bd. of Zoning Adjustment of Kansas City*, 24 S.W.3d 681, 685 (Mo. banc 2000) (statutes defined "yard waste" and "solid waste" separately while ordinances subsumed "yard waste" under "solid waste" definition). Rather, in *Teefey* the Missouri Supreme Court looked to the *effect* of the difference in the defined terms and analyzed the issue according to the same conflict rules:

> [A] court should construe ordinances to uphold their validity unless the ordinances are expressly inconsistent or in irreconcilable conflict with the general law of the state. Ordinances may supplement state laws, but when the expressed or implied provisions of each are inconsistent or in irreconcilable conflict, then the statutes annul the ordinances. To determine if a conflict exists between an ordinance and a state statute, the test is whether the ordinance permits that which the statute prohibits or prohibits that which the statute permits.

*Id.* at 685 (internal citations omitted). In *Teefey*, the ordinances were not void despite the difference in defined terms because "the ordinances do not permit that which the statutes prohibit, nor do they prohibit that which the statutes permit." *Id.* at 686. Because the ICAA merely excludes bars such as JC's from its proscription, it does not affirmatively permit smoking. Consequently, the ordinance does not prohibit that which the state law permits. That the two laws provide different definitions of "public place" does not by itself render the ordinance void.

## Conclusion

For the foregoing reasons, the circuit court's judgment is affirmed.

LOWENSTEIN and SMART, JJ. Concur.