**PATTY SUE, INC., d/b/a Ruthie's Bar, Appellant,**

v.

**CITY OF SPRINGFIELD, Missouri, Respondent.**

**No. SD 31660.**

Missouri Court of Appeals, Southern District, Division Two.

June 19, 2012.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 12, 2012.

Application for Transfer Denied Sept. 25, 2012.

Jonathan Sternberg, Kansas City, for Appellant.

Marianne Landers Banks, Springfield, for Respondent.

Before FRANCIS, P.J., BARNEY, J., and SCOTT, J.

PER CURIAM.

Appellant Patty Sue, Inc., d/b/a Ruthie's Bar ("the Bar") appeals from the trial court's grant of summary judgment in favor of Respondent City of Springfield, Missouri ("the City"). The trial court's grant of summary judgment essentially upheld the City's voter enacted smoking ban ordinance and found it was not "ex-

pressly or implicitly" in conflict with the State of Missouri's previously enacted Indoor Clean Air Act ("ICAA"), sections 191.765–191.777.[1] We affirm the judgment of the trial court.

The record reveals the Bar filed its "PETITION FOR DECLARATORY AND INJUNCTIVE RELIEF" against the City on May 25, 2011, based on its assertion that the City's General Ordinance 5927 ("the Ordinance"), which was "adopted by the vote of the people [on] April 5, 2011," was not in conformity with the law of the State of Missouri. The Bar stated in its petition that it was challenging the validity of the Ordinance in general in addition to the validity of the City's application of the Ordinance to the Bar. It maintained section 71.010[2] prohibits municipal corporations, such as the City, from passing as well as enforcing such a nonconforming ordinance. It asserted the Ordinance's prohibition on smoking in any public place ran afoul of section 191.769(5)[3] which plainly permitted the Bar to make non-smoking areas unavailable when the Bar complied with the subsection's exemption requirements and, in doing so, the Bar could not be considered a "public place" under Missouri law.

On July 25, 2011, the parties in this matter entered into a "JOINT STIPULATION" of the basic facts in this case. Accordingly we consider only whether the judgment is correct as a matter of law. *State ex. rel. Webb v. Hartford Cas. Ins. Co.*, 956 S.W.2d 272, 274 (Mo.App.1997). This stipulation provided the uncontroverted facts upon which the trial court ultimately entered summary judgment in favor of the City. The following facts are drawn therefrom.

Located inside the city limits of Springfield, Missouri,[4] the Bar, and its predeces-

---

1. "The ICAA was enacted 'to provide persons with access to smoke-free air in certain areas in certain public places.'" *City of Kansas City v. Carlson*, 292 S.W.3d 368, 372 (Mo.App. 2009). Section 191.767.1 of the ICAA provides that "[a] person shall not smoke in a public place or in a public meeting except in a designated smoking area." Section 191.767.2 thereof goes on to state that "[a] smoking area may be designated by persons having custody or control of public places, except in places in which smoking is prohibited by the fire marshal or by other law, ordinance or regulation."

 Unless otherwise stated, all statutory references are to RSMo 2000.

2. Section 71.010 provides:

 [a]ny municipal corporation in this state, whether under general or special charter, and having authority to pass ordinances regulating subjects, matters and things upon which there is a general law of the state, unless otherwise prescribed or authorized by some special provision of its charter, shall confine and restrict its jurisdiction and the passage of its ordinances to and in conformity with the state law upon the same subject.

3. Section 191.769 of the ICAA sets out that "[t]he following areas are not considered a public place ... (5) Bars, taverns, restaurants that seat less than fifty people, bowling alleys and billiard parlors, which conspicuously post signs stating that 'Nonsmoking Areas are Unavailable....'"

4. We note the City is a constitutional charter city operating under the authority of Article VI, section 19(a) of the Missouri Constitution. That provision provides that such municipalities have

 all powers which the general assembly of the state of Missouri has authority to confer upon any city, provided such powers are consistent with the constitution of this state and are not limited or denied either by the charter so adopted or by statute. Such a city shall, in addition to its home rule powers, have all powers conferred by law.

 Mo. Const. Art. VI, § 19(a) (2011). Thus, the City has "'all the power which the legislature could grant,' unless otherwise limited by the constitution, statutory law, or its charter." *Carlson*, 292 S.W.3d at 371.

sor establishment, have been in operation since the late 1970's as a tavern that caters to members of the public over the age of 21 "where liquor is served at retail by the drink or consumption on the premises and where the sale of food is merely incidental." The Bar is licensed by various agencies to sell alcohol to the general public and "is an enclosed area under the control of a private employer." Prior to the enactment of the Ordinance, the Bar "and its predecessors always had made nonsmoking areas entirely unavailable ... and always had allowed both patrons and employees to smoke cigarettes inside [the building] without limitation." In fact, the Bar previously had "conspicuous" signs posted throughout the establishment that warned "Nonsmoking Areas are Unavailable."

On June 11, 2011, the Ordinance went into effect. In part, it provides, based on studies showing "there is no safe level of exposure to secondhand smoke" and the fact that there is "currently no air filtration or other ventilation technology that can completely eliminate all the carcinogenic components in secondhand smoke," the Ordinance was necessary "to protect the public health and welfare by prohibiting smoking in public places and places of employment." The Ordinance then states it applies to "bars" which it defined as "an establishment devoted to the serving of alcoholic beverages for consumption by guests on the premises and in which the serving of food is only incidental to the consumption of those beverages, including but not limited to, taverns, nightclubs, cocktail lounges, and cabarets." There is no dispute that the Bar falls within this definition. The Ordinance goes on to prohibit smoking "in all enclosed public places[5] within the City ..." including "[b]ars." It also requires the posting of signs related to the Ordinance, the removal of ashtrays from non-smoking areas, and the cooperation of establishment owners and employees in enforcing and abiding by the Ordinance.

Following competing motions for summary judgment by both the Bar and the City, the trial court, after "review[ing] the briefs of the parties and cited caselaw," specifically limited its judgment to the issue at hand: "whether, as to this plaintiff, [the City's] smoking ordinance expressly or implicitly *conflicts with Missouri's previously enacted [ICAA].*" As such, the trial court found, *inter alia*, that "no genuine issue of material fact precludes the City's entitlement to summary judgment as a matter of law. [The Bar's] motion for summary judgment is DENIED. The [trial court] now GRANTS FINAL JUDGMENT to [the City] upon [the Bar's] petition. This appeal by the Bar followed.

A motion for summary judgment can be granted only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Rule 74.04(c)(6);[6] *see Hitchcock v. New Prime, Inc.*, 202 S.W.3d 697, 699 (Mo.App.2006). Appellate review of the grant of a motion for summary judgment is de novo. *Wilson v. Rhodes*, 258 S.W.3d 873, 875 (Mo.App. 2008). This Court uses the same criteria the trial court should have used in initially deciding whether to grant such a motion. *Harris v. Smith*, 250 S.W.3d 804, 806 (Mo.

---

**5.** The term "[p]ublic [p]lace" is defined in the Ordinance as "an enclosed area to which the public is invited or in which the public is permitted, including but not limited to ... bars...." Further, "[e]nclosed area" is defined in the Ordinance, in part, as "all space between a floor and a ceiling that is bounded on all sides by walls, doorways, or windows, whether open or closed."

**6.** All rule references are to Missouri Court Rules (2011).

App.2008). Appellate review is based upon the record submitted to the trial court. *Sexton v. Omaha Prop. & Cas. Ins. Co.,* 231 S.W.3d 844, 845 (Mo.App.2007). That record is viewed in the light most favorable to the party against whom judgment was entered, and the nonmoving party is accorded the benefit of all inferences which may reasonably be drawn from the record. *ITT Comm Fin. Corp. v. Mid–Am. Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993). As summary judgment is "an extreme and drastic remedy," we exercise great caution in affirming it because the procedure cuts off the opposing party's day in court. *Id.* at 377. Summary judgment is the undisputed right to judgment as a matter of law, not simply the absence of a fact question. *Id.* at 380.

■ "It is, of course, well settled that a municipal ordinance must be in harmony with a general law of the state upon the same subject and is void if in conflict therewith." *Kansas City v. LaRose,* 524 S.W.2d 112, 116 (Mo. banc 1975). "Where its language will permit an ordinance should be construed so as to uphold its validity as against a construction which would invalidate it." *Id.* at 117.

■ In its sole point relied on, the Bar asserts the trial court erred in granting summary judgment in favor of the City holding the [Ordinance] to be valid *because* the ordinance prohibits what a state law on the same subject permits, in violation of [section] 71.010 . . ., and thus is invalid *in that* whereas the [ICAA] permits taverns in [section] 191.769(5) to post conspicuous signs stating 'Nonsmoking Areas are Unavailable' and, having done so, to make nonsmoking areas unavailable indoors, the [O]rdinance absolutely prohibits taverns from doing the same.

In response, the City argues, to the contrary, that the trial court did not err as a matter of law in "upholding the validity of [the Ordinance] because the Ordinance merely regulated an area of law that the [ICAA] did not expressly regulate. . . ." It asserts the ICAA "when read as a whole, constitutes a non-smoker's bill of rights and does not set a minimum right for a smoker, thereby allowing local entities to enact further and more stringent laws or rules."

We are influenced and guided in our decision, as was the trial court, by the case of *Carlson,* 292 S.W.3d 368–75. In *Carlson,* Kansas City, Missouri, enacted an ordinance similar to the one at issue which "prohibit[ed] smoking in enclosed public places and places of employment, with some exceptions for hotels and casinos." *Id.* at 370. That provision went on to provide that a " 'person having control of a public place or place of employment and who fails to comply with the provisions of this Article shall be guilty of an ordinance violation.' " *Id.* (quoting KANSAS CITY, MO., CODE § 34–476(b)). A month after that ordinance went into effect the defendant, Ms. Carlson, was cited for allowing patrons to smoke inside JC Sports Bar ("JC"), an establishment which previously had posted "signs stating 'Nonsmoking Areas are Unavailable.' " *Id.* "In municipal court, Ms. Carlson moved to dismiss the charge, contending that the ordinance conflicted with the ICAA and was thus preempted." The municipal court "found [her] guilty and sentenced her to a fine of $100." *Id.* Following a trial de novo, the circuit court rejected the defendant's argument. *Carlson,* 292 S.W.3d at 370. It found "the state legislature 'could have but did not expressly provide that there could be no further regulation of smoking by any other authority' and was 'not convinced that a definitional exclusion of certain businesses' was equivalent to preemption." *Id.* Accordingly, the defendant was ordered to pay the $100 fine instituted by the munici-

pal court. *Id.* As a result, she appealed the matter to the Western District of this Court. *Id.*

Noting that the defendant based her argument that the ordinance conflicted with the ICAA on section 71.010, the reviewing court stated that

[t]he intent behind ... [Mo. Const. Art. VI, section 19(a) (2001) ] was to 'insure the supremacy of the legislature while at the same time putting only minimal and necessary limitations on the power of municipalities.' Thus, '[u]nder Missouri's new model of home rule ... the municipality possesses all powers which are not limited or denied by the constitution, by statute, or by the charter itself.' Consequently, because the [city of Kansas City's] power is derived from ... section 19(a), the instant case requires us to ask not whether [Kansas] City had authority for its ordinance, but whether its authority to enact the ban was denied by other law....

An ordinance and state statute conflict if 'their express or implied provisions are so inconsistent and irreconcilable that the statute annuls the ordinance.' If the ordinance prohibits what the statute permits, or permits what the statute prohibits, then the two are in conflict. For example, where an ordinance prohibited self-service gas pumps and self-service pumping, but a state regulation expressly stated that self-service gas pumps were permitted, the ordinance was in direct conflict with the state regulation and thus invalid. However, if the ordinance merely prohibits more than the state statute, the two measures are not in conflict. In *LaRose*, a state crime required a *mens rea* element, while a municipal ordinance did not—thus criminalizing more conduct than the state statute. However, there was no conflict between the two because the ordinance had simply 'gone further' and expanded the prohibition.

Consequently, in the present case, if the ICAA were read to *affirmatively* permit smoking in bars and billiard parlors meeting its condition, then the municipal ordinance's prohibition would be in conflict with the state law. However, if the ordinance merely enlarges the state law, the two laws are not in conflict.

*Id.* at 371–72 (emphasis added) (internal citations omitted). The Court then noted that "[t]he ICAA was enacted 'to provide persons with access to smoke-free air in certain areas in certain public places,'" and it outlawed "smoking in 'public places' except in designated areas." *Carlson,* 292 S.W.3d at 372. Removed from the definition of public places was a specific exemption for " '[b]ars, taverns, restaurants that seat less than fifty people ... which conspicuously post signs stating that Nonsmoking Areas are Unavailable.' " *Id.* As such, the reviewing court found the ICAA "does not require bars and billiard parlors such as JC's to provide non-smoking areas." *Id.*

The Court in *Carlson* then turned to an examination of the Kansas City ordinance which, while exempting private residences and other locales, did "not exempt bars and billiard parlors such as JC's from its restrictions." *Id.* After reiterating the requirement that "[w]e read statutes according to their plain and ordinary language," the Court determined that its plain reading of the ICAA did not support JC's contention that the ICAA "authorize[d] those places it exempts to permit smoking or makes them immune from local smoking regulation." *Id.* at 373. Rather, the Court reasoned that "the ICAA simply excludes those places meeting its conditions from compliance with section 191.767." *Carlson,* 292 S.W.3d at 373. The Court then observed that

[t]he failure of the legislature to include an express grant of power may establish that it intended such a power not be

included. The ICAA states that its regulation of smoking in 'public places' does not include bars such as JC's. It does not state, 'A permit to smoke in bars is affirmatively granted.' Had the Missouri legislature intended to grant affirmative authority to these places to allow smoking, it could have so stated. Nor does the ICAA state, 'Smoking in bars cannot be prohibited by cities.' Had the legislature intended to prohibit municipalities from further regulation it could have so stated. Thus, we do not agree, as [Ms. Carlson] argues, that section 191.769(5) 'specifically exempts bars and billiard parlors from indoor smoking regulation' such that the ordinance is in conflict.

*Id.* at 373 (internal citations omitted).

Additionally, the Court explored Ms. Carlson's added request "to look beyond the statute's plain language to read an implied grant of authority to permit smoking such that [Kansas City's] ordinance is in conflict." *Id.* at 373. The Court, however, found the cases cited by Ms. Carlson [7] to be non-persuasive in part because the respective statutes in those cases had set standards for authorized conduct—the level of solids in milk, the length of motor vehicles on highways— and hence the municipal ordinances setting different standards conflicted with the state laws because "conduct was affirmatively authorized under the state law, yet illegal under the municipal ordinance." *Id.* at 373–74. Rather, the Court determined that *LaRose,* 524 S.W.2d at 116, was more analogous to the laws under consideration in *Carlson* and determined there was no conflict between the state law and municipal ordinance where each prohibited similar conduct but the municipal ordinance had gone further and expanded the prohibition. *Carlson,* 292 S.W.3d at 372.

 The same rationale is applicable to the present matter. In determining whether a city ordinance conflicts with statutory authority we turn to statutory construction to determine "whether the ordinance prohibits what the statute permits or permits what the statute prohibits." *Home Builders Assoc. of Greater St. Louis, Inc. v. City of Wildwood,* 107 S.W.3d 235, 238 (Mo. banc 2003); *see Morrow v. Kansas City,* 788 S.W.2d 278, 281 (Mo. banc 1990). It is settled law that "[t]he purpose of statutory construction is to determine the intent of the legislature" and that "[i]n arriving at that intention, the objectives of the act are to be considered, and the construction must be reasonable and logical and give meaning to the statute[ ]." *State ex rel. Rhodes v. Crouch,* 621 S.W.2d 47, 49 (Mo. banc 1981). While "[a]n ordinance may supplement a state law," an ordinance may not expressly or impliedly be in inconsistent or irreconcilable conflict with the state law. *Page,* 636 S.W.2d at 67; *see Vest v. Kansas City,* 355 Mo. 1, 194 S.W.2d 38, 39 (1946). If the foregoing occurs, the "statute annuls the ordinance." *Page,* 636 S.W.2d at 67; *see Klausmeier,* 112 S.W. at 518–19.

As previously related, the test for determining if a conflict exists is whether the ordinance "permits what the statute prohibits" or "prohibits what the statute permits." *Vest,* 194 S.W.2d at 39. Here, the Bar's essential argument is that the City, through the Ordinance's restrictions on smoking in public places, does not have the power to restrict smoking in taverns because taverns are specifically exempted from the definition of "public place" set out in the ICAA. However, the ICAA granted the Bar the ability to be exempt from the

---

7. Ms. Carlson cited to *City of St. Louis v. Klausmeier,* 213 Mo. 119, 112 S.W. 516 (1908), and *City of St. Louis v. Stenson,* 333 S.W.2d 529, 533–34 (Mo.App.1960). *Id.* at 373.

clean air regulations—it did not exempt the Bar from all other regulations.

The ICAA is not a statute that was enacted to permit smoking or to protect the rights of smokers. "The ICAA is a prohibitory statute[.]" *Carlson,* 292 S.W.3d at 374. "Because the ICAA merely excludes bars such as [the Bar] from its proscription, it does not affirmatively permit smoking." *Id.* at 375. Based on the foregoing we cannot say that the Ordinance "prohibit[s] what the statute permits." *Vest,* 194 S.W.2d at 39. The trial court did not err in granting the City's motion for summary judgment. Point denied.

The judgment of the trial court is affirmed.